IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., and COMPOUND SOLUTIONS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 11-788-GMS |
| DNP INTERNATIONAL CO., INC., | ) ) | (Consolidated) |
| Defendant. | ) ) | |

**DEFENDANT DNP INTERNATIONAL CO., INC'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

OF COUNSEL:
Enoch H. Liang
Steven R. Hansen
Edward S. Quon
LEE TRAN LIANG & WANG LLP
601 S. Figueroa Street, Suite 4025
Los Angeles, CA 90017
(213) 612-3737

Dated: February 7, 2014

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for DNP International Co., Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... ii

I.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

II.   SUMMARY OF THE ARGUMENT ...............................................................2

III.  STATEMENT OF FACTS ............................................................................3

      A.    The Patents-in-Suit Are From the Same Family of Inventions..............3

      B.    Claim Terms to be Construed ...................................................4

IV.   PRINCIPLES OF CLAIM CONSTRUCTION .................................................4

V.    ARGUMENT ...............................................................................................6

      A.    Human Dietary Supplement.......................................................6

            1.    "Human Dietary Supplement" Is Not a Claim Limitation.........6

            2.    If "Human Dietary Supplement" Is Construed, It Should Not Include
                  the Multiple Extraneous Requirements Advocated by Plaintiffs................8

      B.    Effective In Delaying The Onset Of Fatigue In a Human ....................10

            1.    Legal Standards for "Indefiniteness" under 35 U.S.C.
                  § 112, ¶ 2........................................................................10

            2.    The Limitation Is Indefinite for Failing to Teach How to Use the Human
                  Dietary Supplement in a Manner "Effective in Delaying the Onset of
                  Fatigue in a Human." .............................................................11

VI.   CONCLUSION...........................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
    Slip Op., No. 2012-1011(Fed. Cir. Feb. 4, 2013) ....................................................9

*American Medical Systems, Inc. v. Biolitec, Inc.*,
    618 F.3d 1354 (Fed. Cir. 2010).......................................................................6

*Catalina Mktg Int'l v. Coolsavings.com, Inc.*,
    289 F.3d 801, 809 (Fed. Cir. 2002).................................................................7

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004).........................................................................5

*Datamize LLC v. Plumtree Software*,
    417 F.3d 1342, 1348 (Fed Cir. 2005)..............................................................5

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed.Cir.2001).......................................................................10

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006).......................................................................5

*In Honeywell International, Inc. v. International Trade Commission*,
    341 F.3d 1332 (Fed. Cir. 2003).....................................................................10

*Markman* v. *Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) *(en bane), aff'd, 517* U.S. 370, 372 (1996) ................................4

*Novartis Pharma. Corp. v. Abbott Laboratories*,
    375 F.3d 1328 (Fed. Cir. 2004).......................................................................4

*Phillips* v. *AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) *(en banc)* ....................................................4, 5

*Praxair, Inc. v. ATMI, Inc.*,
    543 F.3d 1306 (Fed. Cir. 2008).......................................................................5

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998).......................................................................5

*S3 Inc. v. nVIDIA Corp.*,
    259 F.3d 1364 (Fed.Cir.2001).......................................................................10

*Schumer v. Lab. Computer Sys., Inc.*,
    308 F.3d 1304 (Fed. Cir. 2002).........................................................................................6

*Vitronics Corp.* v. *Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)..........................................................................................4

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Natural Alternatives International, Inc. ("NAI") and Compound Solutions, Inc. ("CSI") (collectively, "Plaintiffs") have accused DNP International Co., Inc.'s ("DNP's") customers of infringing U.S Patent Nos. 5,965,596; 6,172,098; 6,426,361; and 8,067,381 (collectively, "the Patents-in-Suit"), which DNP has refused to license.   Given Plaintiffs' repeated assertions to DNP and its customers that the Patents-in Suit cover the products and/or activities of DNP and/or its customers as well as Defendants' repeated assertions that the Patents-in-Suit are not invalid, DNP filed this declaratory judgment action for invalidity and non-infringement of the Patents-in-Suit.

Because this Court has already construed various disputed terms in *Natural Alternatives International, Inc. v. Vital Pharmaceuticals, Inc., et al.*, Civil Action No. 09-626-GMS ("VPX Litigation"), and issued an Order on May 31, 2011, D.I. 125 ("Claim Construction Order") construing certain claim terms in U.S. Patent Nos. 5,965,596; 6,172,098; and 6,426,361 (collectively, the "Old Patents"), the parties agreed not to ask the Court to re-construe the terms of the Old Patents.[1]   The parties filed a stipulation to that effect.  (D.I. 47.)

As a result of this stipulation by the parties,[2] if entered by the Court, only two terms remain in dispute for construction.   Both of the disputed terms are from U.S. Patent No. 8,067,381 ("the '381 Patent) as set forth in the Joint Claim Construction Chart filed on January 31, 2014, D.I. 46.  Defendant submits this brief in support of its proposed constructions.

---

[1]  Although the parties have agreed to the constructions of various terms of the Old Patents based on the Claim Construction Order for the purposes of this action, the parties have noted their objection to portions of the Claim Construction Order and their reservation of rights to obtain appellate review of the Court's May 2011 construction.  (D.I. 47, at 2-3.)

[2]  If, for some reason, the Court does not enter the parties' stipulation, then DNP reserves the right to re-adopt here its claim construction brief and arguments from the May 2011 construction and *Markman* hearing.

## II.   SUMMARY OF THE ARGUMENT

The claim construction disputes at issue all concern the '381 Patent.  In this case, the inventors received broad patent claims that cover well-known compositions that include beta-alanine and L-histidine.  Recognizing that they did not invent beta-alanine, the inventors nevertheless sought ***composition claims*** and attempted to distinguish the prior art by including features that concern how those compositions ***may*** be used.  In particular, the inventors added the phrase "human dietary supplement" to the preamble of all of the '381 Patent claims and the phrase "effective to delay the onset of fatigue in a human" in Claim 13 in an effort to somehow distinguish known beta-alanine compositions in the prior art.

Under established rules of claim construction, however, the "human dietary supplement" feature of the preamble is nothing more than a non-limiting statement of ***intended use*** that cannot distinguish the prior art. Moreover, if the Court were to conclude that "human dietary supplement" is a limitation, it would render all claims of the '381 Patent indefinite because one skilled in the art cannot determine whether an accused or prior art construction is in fact a "human dietary supplement" unless and until a human supplements his or her diet by ingesting it.  Thus, because the '381 Patent claims ***conflate compositions*** and ***methods of using compositions***, they cannot be construed in a definite manner.

Similarly, the phrase "effective in delaying the onset of fatigue in a human" renders Claim 13 indefinite.  As NAII's construction and the specification of the '381 Patent indicates, whether a particular beta-alanine composition is "effective in delaying the onset of fatigue in a human" is dictated by, among other things, the dosage and the particular human taking it.  Thus, one skilled in the art cannot determine whether a given accused or prior art beta-alanine composition meets this limitation or not, because it ***necessarily*** depends on factors other than the composition itself.  This thereby renders Claim 13 indefinite.

The Federal Circuit has consistently held that indefiniteness is an issue of law decided by the Court in its role as the construer of claims.  Accordingly, DNP asks that the Court construe the claims of the '381 Patent as not being limited by the phrase "human dietary supplement," or in the alternative, that the phrase renders the claims indefinite.  DNP also asks that the Court find that that the phrase "effective in delaying the onset of fatigue in a human" renders Claim 13 of the '381 Patent invalid for indefiniteness.

## III.   STATEMENT OF FACTS

### A.   The Patents-in-Suit Are From the Same Family of Inventions

The Patents-in-Suit all belong to the same family of patents[3] and share a common specification.  The patents describe methods and compositions for increasing the concentration of beta-alanylhistidine dipeptide in tissue, thereby purportedly increasing the anaerobic working capacity of such tissue.  *See* '381 Patent at 2:48-56.  The methods include, among other things, providing beta-alanine and L-histidine to blood or blood plasma effective to increase beta-alanylhistidine dipeptide synthesis in a tissue.  '381 Patent at 2:64-3:3.

While the specification describes methods of use involving the ingestion of the disclosed compositions, the claims of the '381 Patent notably ***do not*** recite such methods.  Instead, they

---

[3] The '381 patent allegedly claims priority to U.S. Patent No. 5,965,596 ("the '596 Patent"), filed on August 21, 1997.  On December 6, 2013, the United States Patent and Trademark Office ("USPTO") issued a Right of Appeal Notice ("RAN") in the *inter partes* reexamination of the '381 Patent.  In the RAN, a final decision of the USPTO reexamination unit, the USPTO maintained the rejection of all of the '381 Patent claims.  Notably, the USPTO ruled that NAI effectively disclaimed priority to earlier applications in the chain of applications in the patent family, and as such, NAI's own patents are considered prior art to the '381 Patent.  The RAN is a "final decision" of the reexamination unit on the unpatentability of the '381 Patent claims.  (*See* Exh. A (RAN), at p.34).  NAI has appealed the decision to the USPTO Patent Trial and Appeal Board.

recite a composition that purports to be a "human dietary supplement" and do not specify the step of ingestion.

###    B.      Claim Terms to be Construed

This Court is asked to construe two terms in the '381 Patent, specifically "human dietary supplement" and "effective in delaying the onset of fatigue in a human." The Joint Claim Construction Chart, D.I. 46, lists the disputed claim terms and the parties' proposed constructions.

## IV.    PRINCIPLES OF CLAIM CONSTRUCTION

The Court is well versed in the principles of claim construction, which Defendants briefly summarize below. Claim construction is a matter of law and a threshold issue for the trial court to decide. *Markman* v. *Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) *(en bane), aff'd, 517* U.S. 370, 372 (1996). The court determines the meaning of pertinent claim language to establish the scope of the claims for purposes of determining infringement and validity. *Id.* at 978-79. There are four principal sources of evidence that the trial court may use in construing claims: (1) the language of the claims; (2) the patent specification; (3) the prosecution history; and (4) extrinsic evidence. Claim construction begins with an examination of the intrinsic evidence, *i.e.*, sources (1)-(3) above. *Vitronics Corp.* v. *Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). Intrinsic evidence is preferred and is the most useful in claim construction. Although extrinsic evidence can be used, it is considered secondary. *Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1318-19 (Fed. Cir. 2005) *(en banc)*.

While claim terms ordinarily take on "the meaning that a person of ordinary skill in the art would attribute to them," a different meaning will be attached "when: (1) the patentee has chosen to be his own lexicographer, or (2) a claim term lacks such clarity that there is 'no meaning by which the scope of the claim may be ascertained from the language used." *Novartis*

*Pharma. Corp. v. Abbott Laboratories,* 375 F.3d 1328, 1334 (Fed. Cir. 2004) (citing *Johnson Worldwide v. Zebco*, 175 F.3d 985, 990 (Fed. Cir. 1999)). As long as the patentee's lexicography appears "with reasonable clarity, deliberateness, and precision," the definition selected by the patent application controls. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) (quoting *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1992)).

Claim terms should be construed in accordance with the purpose of the claimed invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005); *Renishaw PLC,* 158 F.3d at 1250. Further, statements in the specification "that describe the invention as a whole, rather than statements that describe only preferred embodiments," are properly found to limit the scope of the invention. *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004); *accord, e.g.*, *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318-19 (Fed. Cir. 2006). Likewise, "[w]here the general summary or description of the invention describes a feature of the invention . . . and criticizes other products . . . that lack that same feature, this operates as a clear disavowal of these other products (and processes using these products)."

Indefiniteness is a matter of claim construction—the same principles that generally govern claim construction are applicable to determining whether the allegedly indefinite claim language is subject to construction. *Datamize LLC v. Plumtree Software*, 417 F.3d 1342, 1348 (Fed Cir. 2005). Whether a claim is invalid for indefiniteness would have to be determined at the time the claim is construed, because the standard for indefiniteness is whether the claim can be construed at all.[4] *See, e.g., Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008) ("A claim will be found indefinite only if it is insolubly ambiguous, and no narrowing

---

[4] DNP reserves the right to later seek the Court's permission to move for summary judgment of invalidity based on indefiniteness and failure to enable.

construction can properly be adopted…. ) (emphasis added, internal quotation marks and citations omitted); *see also id.*("Indefiniteness is a matter of claim construction ….").

## V.    ARGUMENT

### A.    Human Dietary Supplement[5]

| Plaintiffs' Proposed Construction | DNP's Proposed Construction |
|---|---|
| "an addition to the human diet,  ingested as a pill, capsule, tablet, powder or liquid, which is not a natural or conventional food, meat or food flavoring or extract, or pharmaceutical product  and that increases the function of tissues when consumed over a period of time." | The term should not be construed because it is not a limitation.<br><br>However, if the term is construed to be a limitation, the claims are rendered indefinite. |

### 1.    "Human Dietary Supplement" Is Not a Claim Limitation

Plaintiffs contend that phrase "human dietary supplement," which only appears in the preamble of the '381 Patent claims, should be considered to be a limitation.  Plaintiffs are wrong.[6]

The Federal Circuit has held that generally, "the preamble does not limit the claims." *American Medical Systems, Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)).  The preamble is not a limitation where the body of a claim sets out the complete invention and the preamble only states a purpose of intended use for the invention.  *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1310 (Fed. Cir. 2002).  This is because for apparatus claims, patentability "depends

---

[5]  The term appears in the preamble of each of the '381 Patent, Claims 1-14.

[6]  In the May 2011 Claim Construction Order, this Court held that the term "dietary supplement" for the Old Patents would "not be construed because it is not a limitation." *See* Claim Construction Order, D.I. 125, at 2, n. 2.

on the claimed structure, not on the use or purpose of that structure." *Catalina Mktg Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002).

Under these established rules of claim construction, however, the "human dietary supplement" feature of the preamble is nothing more than a non-limiting statement of ***intended use*** that cannot distinguish the prior art. The phrase "human dietary supplement" merely states an intended use, and therefore is not a claim limitation.

For example, claim 1 of the '381 patent claims "A **human dietary supplement** comprising at least one of an amino acid wherein said amino acid is beta-alanine that is not part of a dipeptide, polypeptide or oligopeptide." (Emphasis added.)  The preamble of claim 1, "a human dietary supplement," is unmistakably an intended use.  In addition, the body of claim 1 defines a structurally complete invention setting forth all the limitations of the claimed composition—"comprising an amino acid of beta-alanine," "an ester of beta-alanine," or "an amide of beta-alanine."  Nowhere is the phrase "human dietary supplement" referenced in the body of the claims.  Accordingly, the phrase "human dietary supplement" is merely a statement of purposes and is not a limitation.  *See* Exh. A (RAN), at 7 (stating that "'a human dietary supplement'[] is not construed to be a limitation since it states the purpose or intended use of the composition.").

It is worth pointing out that the specification also discusses ***non-humans***, noting that "[t]he methods and compositions can be used to increase beta-alanylhistidine dipeptide by, for example, sportsmen, athletes, body-builders, synchronized swimmers, soldiers, elderly people, ***horses*** . . . . " '381 Patent at 7:5-9 (emphasis added).  Accordingly, if NAII intend to claim a "human dietary supplement" with the '381 Patent, then NAII would have (or should have) included a ***method*** of use claim that positively recites the ingestion of the composition by a

human.  NAII did not do that however, claiming **only composition** claims in the '381 Patent. The term "human dietary supplement" does not need to and indeed cannot be construed.

Finally, if the Court were to conclude that "human dietary supplement" is a limitation, it would render all claims of the '381 Patent indefinite because one skilled in the art cannot determine whether an accused or prior art construction is in fact a "human dietary supplement" unless and until a human supplements his or her diet by ingesting it.  Thus, because the '381 Patent claims **conflate** compositions and methods of using compositions, they cannot be construed in a definite manner.

> **2.** **If "Human Dietary Supplement" Is Construed, It Should Not Include the Multiple Extraneous Requirements Advocated by Plaintiffs**

If the Court construes "human dietary supplement," the Court should reject Plaintiffs' proposed construction.  Plaintiffs' construction limits "human dietary supplement" to only those dietary supplements that are (1) in "pill, capsule, tablet, powder, or liquid form," (2) "[effective to] increase the function of tissues," (3) "consumed," and (4) not a "natural or conventional food."  Plaintiffs proposed construction is not supported by the intrinsic record.

First, there is no intrinsic evidence to support Plaintiff's position that "human dietary supplement" should be limited to a "pill, capsule, tablet, powder, or liquid form" that "effectively increases the function of tissues when consumed."  For example, the intrinsic evidence makes clear that "dietary supplement" need not be "consumed."  The specification expressly sets forth that dietary supplement can be administered by infusion (e.g., injection), as well as orally, enterally, or parenterally.  *See* '381 Patent at 5:46-47; *id.* at 9:20-23.  Even the claims of the '381 patent further confirm that dietary supplement is not limited to dietary supplements that can be "consumed."

Likewise, dietary supplements can come in other forms besides pill, capsule, tablet, powder, or liquids, and can have other functions besides "effectively increase[ing] the function of tissues."  For instance, it is common sense that dietary supplements can be taken for numerous reasons, besides increasing the function of tissues (such as to lower cholesterol levels).

Second, Plaintiffs' proposed construction of dietary supplement excludes "natural or conventional food, meat or food flavoring or extract"—this would exclude meat and animal products (which necessarily contain beta-alanine and L-histidine).  However, the specification clearly describes conventional foods as dietary supplements, and also makes clear that beta-alanine remains in processed (e.g., cooked) foods, in both the individual amino acid form and as a component of dipeptides.  In Example 2, the inventors describe supplementing the diets of a test subject with chicken broth, which is a conventional food. '381 Patent at 14:15-15:43 (Example 2); *id.* at 11:56 ("broth, a natural food"); *see also, e.g., id.* at 1:40-42, 10:53-57.  In addition, a portion of the chicken broth from Example 2 was assayed for the total beta-alanyl-dipeptide (e.g., carnosine and anserine) and beta-alanine content.  *See id.* at 14:34-36.  The result of the analysis was that the chicken broth contained beta-alanine in the individual amino acid form and in the form of a component of dipeptides.  *Id.* at 14:37-43.

This demonstrates that not only do conventional foods, even when cooked, contain beta-alanine (in both the individual amino acid form and as a component of dipeptides), but that the inventors used natural and conventional foods as a dietary supplement in a preferred embodiment.  It is a basic principle of claim construction that "a claim interpretation that excluded a preferred embodiment is rarely, if ever, correct." *Accent Packaging*, *Inc. v.Leggett & Platt*, *Inc.*, No. 2012-1011 (Fed. Cir. Feb. 4, 2013), Slip Opinion, at 12.

## B.      Effective In Delaying The Onset Of Fatigue In a Human[7]

| Plaintiffs' Proposed Construction | DNP's Proposed Construction |
|---|---|
| "requires the human dietary supplement to be present in a sufficient amount and to be consumed over a period of time such that it will delay the onset of fatigue." | Indefinite. |

### 1.      Legal Standards for "Indefiniteness" under 35 U.S.C. § 112, ¶ 2.

The definiteness requirement of § 112, ¶ 2 "focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." *S3 Inc. v. nVIDIA Corp.,* 259 F.3d 1364, 1371-72 (Fed.Cir.2001) (citing *Solomon,* 216 F.3d at 1379).   It requires "that the claims be amenable to construction, however difficult that task may be." *Exxon Research & Eng'g Co. v. United States,* 265 F.3d 1371, 1375 (Fed.Cir.2001).   Because a claim is presumed valid, a claim is indefinite only if the "claim is insolubly ambiguous, and no narrowing construction can properly be adopted." *Id.*

*In Honeywell International, Inc. v. International Trade Commission*, 341 F.3d 1332 (Fed. Cir. 2003), the patent-in-suit involved PET yarn production processes.   The claims required a particular "melting point elevation" or "MPE."   The patent defined MPE and even provided an example of how to determine it.   However, the method of preparing the sample to determine the MPE was not specified, and the sample preparation technique used by the inventors was actually an "unpublished" confidential company method.   The Federal Circuit Court of Appeals found the patent claims invalid for indefiniteness.

---

[7] The term appears only in Claim 13 of the '381 Patent.

The Federal Circuit Court held: "The claims, written description, and prosecution history do not mention the different sample preparation methods or provide sufficient clues to discern which methods are acceptable.  The written description does mention the use of a Perkin-Elmer DSC and 2 mg specimen sample size, but that information does not lead one of ordinary skill in the art to a particular sample preparation method. . . .  Because the intrinsic record is devoid of meaningful references to those processes, the intrinsic record fails to 'resolve any ambiguity in a disputed claim term.'" (citation omitted).  *Id. at* 1339-40.

> **2.** **The Limitation Is Indefinite for Failing to Teach How to Use the Human Dietary Supplement in a Manner "Effective in Delaying the Onset of Fatigue in a Human."**

Here, Plaintiff's construction has added limitations that go to the specific ***method*** of use, even though the '381 Patent is only for certain ***compositions***.  For example, Plaintiff's construction requires "a sufficient amount" and consumption "over a period of time" in order to "delay the onset of fatigue."  But, whether there is a "sufficient amount" depends on the height, weight, sex, body type, and metabolism of the particular human consuming it.  The same holds true for the relevant "period of time."  Thus, one skilled in the art cannot determine whether a given accused or prior art beta-alanine composition meets this limitation or not, because it ***necessarily*** depends on factors other than the composition itself.  This thereby renders Claim 13 indefinite.

Nor does the specification teach how to delay the onset of fatigue, either by providing the "sufficient amount" of human dietary supplement, or the "period of time" over which the human dietary supplement must be consumed.  For example, the intrinsic record provides little guidance as to what is claimed and how to use the human dietary supplement in a manner "effective in delaying the onset of fatigue in a human"  The specification, at most, discusses providing a group of six subjects with an amount of beta-alanine to investigate endurance.  More specifically, this

example provides that these six male subjects were administered three doses of 40 milligrams per kilogram body weight of beta-alanine for 2 weeks to perform this investigation. '381 Patent at 16:27-18:15 (Example 4). The results of the investigation demonstrated that five of the six test subjects increased their mean endurance time for contracting their dominant leg at 66% maximum. *Id.* at 16:49-17:15 (Example 4, Table 7).

The specification provides no guidance as to what constitutes a "sufficient amount" or what constitutes "a period of time" within the scope of the claim, and further, fails to provide guidance as to other variables including the body type, metabolism, sex, or age of the potential supplement taker. Neither Claim 13, nor Claim 1 which Claim 13 depends on, provide further clarity to the matter. The claim limitation is simply not amenable to construction. As such, the claim term "effective in delaying the onset of fatigue in a human" is insolubly ambiguous and therefore indefinite.

## VI.    CONCLUSION

DNP's proposed constructions are true to the intrinsic evidence and to the patentee's objective in conceiving his claimed inventions. Plaintiffs' limiting constructions to avoid invalidity, in contrast, are at odds with the intrinsic evidence. For the foregoing reasons, DNP respectfully requests that the Court adopt its proposed constructions for each of the disputed claim terms.

Respectfully submitted,

OF COUNSEL:

Enoch H. Liang
Steven R. Hansen
Edward S. Quon
LEE TRAN LIANG & WANG LLP
601 S. Figueroa Street, Suite 4025
Los Angeles, CA 90017
(213) 612-3737

Dated: February 7, 2014

/s/ Andrew E. Russell
Karen E. Keller (No. 4489)
Andrew  E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
Attorneys for DNP International Co., Inc.

# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/002,001 | 05/31/2012 | 8067381 | 028284.0105X7US | 2667 |

32042          7590          12/06/2013

PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037

| EXAMINER |
|---|
| PONNALURI, PADMASHRI |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3991 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/06/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Transmittal of Communication to Third Party Requester** *Inter Partes* **Reexamination** | **Control No.** 95/002,001 | **Patent Under Reexamination** 8067381 | |
|---|---|---|---|
| | **Examiner** PADMASHRI PONNALURI | **Art Unit** 3991 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

┌─── (THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS) ───┐

Barry Evans
LUCAS & MERCANTI, LLP
475 Park Ave. South, 15th Floor
New York, NY 10016

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination prceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

| *Right of Appeal Notice* (37 CFR 1.953) | Control No. | Patent Under Reexamination |
|---|---|---|
| | 95/002,001 | 8067381 |
| | Examiner | Art Unit |
| | PADMASHRI PONNALURI | 3991 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on <u>23 August, 2013</u>
Third Party(ies) on _____

Patent owner and/or third party requester(s) may file a notice of appeal with respect to any adverse decision with payment of the fee set forth in 37 CFR 41.20(b)(1) within **one-month or thirty-days (whichever is longer)**. See MPEP 2671. In addition, a party may file a notice of **cross** appeal and pay the 37 CFR 41.20(b)(1) fee **within fourteen days of service** of an opposing party's timely filed notice of appeal. See MPEP 2672.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

If no party timely files a notice of appeal, prosecution on the merits of this reexamination proceeding will be concluded, and the Director of the USPTO will proceed to issue and publish a certificate under 37 CFR 1.997 in accordance with this Office action.

The proposed amendment filed _____        ☐ will be entered   ☒ will not be entered*

*Reasons for non-entry are given in the body of this notice.

1a. ☒ Claims <u>1-36</u> are subject to reexamination.

1b. ☐ Claims _____ are not subject to reexamination.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are confirmed. [Unamended patent claims].

4. ☐ Claims _____ are patentable. [Amended or new claims].

5. ☒ Claims <u>1-36</u> are rejected.

6. ☐ Claims _____ are objected to.

7. ☐ The drawings filed on _____ ☐ are acceptable.   ☐ are not acceptable.

8. ☐ The drawing correction request filed on _____ is ☐ approved.   ☐ disapproved.

9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d) or (f). The certified copy has:
   ☐ been received.   ☐ not been received.   ☐ been filed in Application/Control No. _____.

10. ☐ Other _____

**<u>Attachments</u>**

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☒ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

Application/Control Number: 95/002,001                                          Page 2
Art Unit: 3991

The present application is being examined under the pre-AIA first to invent provisions.

## Inter Partes Reexamination
## Right of Appeal Notice (RAN)

### Procedural Posture

| | |
|---|---|
| 5/31/2012 | A request for *Inter partes* reexamination of claims 1-14 of United States Patent Number 8,067,381 B1 to Harris *et al* was filed. |
| 7/26/2012 | The Request for reexamination was granted for claims 1-14. A Non-Final Office Action on the Merits was mailed together with the order granting reexamination. |
| 10/29/2012 | Patent Owner's response, claim amendment (informal), Information Disclosure statement and 37 CFR 1.132 Declarations of Craig Sale, and Roger Charles Harris were filed. |
| 11/13/2012 | Notice of Defective paper in Reexamination was mailed. |
| 11/28/2012 | Third Party Requester's response and Information Disclosure Statement (listing Exhibits A-F) were filed. |
| 12/12/2012 | A corrected claim amendment was filed. |
| 07/25/2013 | ACP was mailed. |
| 08/23/2013 | Patent Owner's response, claim amendment and 37 CFR 1.132 Declaration by Stephen G. Kunin were filed. |
| 09/23/2013 | Third Party Requester filed a response, which fails to comply with 37 CFR 1.951 (b). Accordingly, the Third Party Requester's comments have been expunged from the record (see 11/14/13 Notice of Defective Paper). |

### Submissions/Amendments after Action Closing Prosecution (ACP)

Patent Owner filed a response amending newly added claims 15, 30-34 and 36; claim 35 was canceled; and new claim 37 was added.

Consideration of the proposed amendments submitted after ACP (pursuant to 37 CFR 1.951(a)) will be governed by the strict standards of 37 CFR 1.116. (See MPEP 2672).

In an *Inter partes* reexamination proceeding after ACP, no amendment other than cancelling claims, where such cancellation does not affect the scope of any other pending claim in the proceeding can be made (see 37 CFR 1.116).

...A patent owner cannot, as a matter of right, amend claims rejected in the ACP, add new claims after an ACP, nor reinstate previously canceled claims. A showing under 37 CFR **1.116**(b) is required and will be evaluated by the examiner for all proposed amendments after the ACP, except where an amendment merely cancels claims, adopts examiner's suggestions, removes issues for appeal, or in some other way requires only a cursory review by the examiner.

Where the entry of the proposed amendment (after the ACP) would result in any ground of rejection being withdrawn or any additional claim indicated as patentable, the proposed amendment generally raises new issues requiring more than cursory review by the examiner. See MPEP 2673.

Where a submission has been filed under 37 CFR **1.951**(a) (or 37 CFR **1.951**(b)) and that submission is incomplete or is defective, the examiner should notify the parties, in the RAN, that the submission has not been considered, and that no additional opportunity is available to correct the defect(s) in the submission, because 37 CFR **1.951**(a) and (b) provide that comments may only be filed "once." (See MPEP 2673).

The amendment filed on 8/23/13 (after ACP) is <u>not entered</u> in this Reexamination proceeding because the amendment would raise new issues requiring more than cursory review by the examiner:

- The composition of newly proposed claim 37 includes several negative limitations, such as "not a natural or conventional food"; "not a meat extract or predigested meat/protein supplement"; "formulated as a human dietary supplement for consumption over time and in a sufficient amount to effectively increase tissue function in a human", which may raise issues under 35 USC 314.

- The amendment to claims 15 and 37 raises lack of written description rejection.

- The amendment does not merely cancel claims or the amendment does not present the rejected claims in better form for consideration on appeal.

- The amendment does not comply with 37 CFR 1.530 (f) which states in part:
    - Any changes relative to the patent being reexamined which are made to the specification, including the claims, must include the following markings:
        (1) The matter to be omitted by the reexamination proceeding must be enclosed in brackets; and
        (2) The matter to be added by the reexamination proceeding must be underlined (see MPEP 1.530 (f).

Application/Control Number: 95/002,001                                Page 4
Art Unit: 3991

> Patent Owner must continue underlining the new claims; and the subject matter to be
> deleted must be enclosed in brackets, according 37 CFR 1.530 (see MPEP 2666 and 37 CFR
> 1.530(f) (i)).

### Status of Submissions after ACP

This Right of Appeal Notice (RAN) is based on the Patent Owner's amendment filed on 12/12/13.

In this office action, Patent Owner's 8/23/13 response is considered only to the extent it is pertinent to the original claims and the 12/12/13 amendment.

### Information Disclosure Statement

The information disclosure statement filed on 8/26/13 is considered.

### Status of Claims

Claims 1-14 were originally present in the `381 patent. New claims 15-36 are added by the amendment filed on 12/12/12. Claims 1-36 are currently under reexamination.

### Priority

The present `381 Patent was issued from application 13/215,073, filed on August 22, 2011;
    which is a Continuation of application 12/806,356, filed on 8/10/2010, now US Patent 8,129,422;
    which is a Continuation of application 12/231,240, filed on 8/29/2008, now US Patent 7,825,084;
    which is a Continuation of application 10/717,217, filed on 11/18/2003, now US Patent 7,504,376;
    which claims the benefit of priority under 35 U.S.C. § 119(e) of US Provisional Application No. 60/462,238, filed on April 10, 2003 **and**
    that is a Continuation-in-part of application 10/209,169, filed on 7/30/2002, now US Patent 6,680,294;
    which is a Continuation of application 09/757,782, filed on 1/9/2001, now US Patent 6,426,361;
    which is a Continuation of application 09/318,530, filed on 5/25/1999, now US Patent 6,172,098;
    which is a Divisional of application 08/909,513, filed on 8/12/1997, now US Patent 5,965,596.

The Requester asserted that the present `381 patent can claim priority only up to April 10, 2003 the filing date of the provisional application 60/462,238.

The Requester argued that applicants broke the chain of priority between the fourth application (10/209,169, filed on 7/30/02) and fifth application (10/717,217, filed on 11/18/2003).

The Requester argued that the invention claimed in the fifth application (10/717,217) was not entitled to an earlier priority because it was not disclosed in any prior non-provisional applications.

The Requester asserted that the claim to priority in the sixth application and seventh application is defective.

In response to the issues raised by the Third Party Requester on pages 1-12 of the request, the priority to all the parent applications is reviewed for determination of the effective filing date.

Initially, it is noted since the present `381 patent application 13/215,073 is a continuation of application 12/806,356; which is a continuation of application 12/231,240; which is a continuation of application 10/717,217, filed on 11/18/2003 (now US Patent 7,504,376), which claims benefit of the provisional application filed on April 10, 2003. As such, the present `381 patent claims are entitled to the priority date of 4/10/2003, the filing date of the provisional application 60/462,238.

During the prosecution of the application 10/717,217, Applicants have amended the priority to the parent applications (see the amendment filed on 9/2/2008, Exhibit C).

Applicant : Reeves et al
Serial No. : 10/717,217                                   Attorney's Docket No. : 1008143-002357/3412E
Filed : November 18, 2003                                           RCE & Preliminary Amendment

AMENDMENT TO THE SPECIFICATION:

Please amend the specification at page 1, under "Related Application," lines 4-28 as follows:

This application claims the benefit of priority under 35 U.S.C. Section 119(e) of U.S. Provisional Application No. 60/462,238, filed Apr. 10, 2003, which is incorporated by reference herein. This application

The following applications also are incorporated by reference herein. is also a continuation-in-part (CIP) of U.S. application Ser. No. 10/209,169, filed Jul. 30, 2002; , which is a continuation of U.S. application Ser. No. 09/757,782, filed Jan. 9, 2001, now U.S. Pat. No. 6,438,561; , which is a continuation of U.S. application Ser. No. 09/318,539, filed May 25, 1999, now U.S. Pat. No. 6,172,088; , which is a divisional of U.S. application Ser. No. 08/909,513, filed Aug. 12, 1997, now U.S. Pat. No. 5,965,596; and , which claims the benefit of foreign priority under 35 U.S.C. 119 to United Kingdom application nos. 9621814.2, filed Oct. 21, 1996, and 9816910.7, filed Aug. 12, 1998. The aforementioned applications are explicitly incorporated herein by reference in their entirety and for all purposes.

In the 10/717,217 application, Applicants have deleted the continuity to the applications 10/209,169; 09/57,782; 09/318,530 and 08/909,513. The amendment also deleted the claimed benefit to the two UK applications. The amendment has stated that the parent applications 10/209,169; 09/57,782; 09/318,530 and 08/909,513 and the UK applications are incorporated by reference.

Application/Control Number: 95/002,001                                           Page 6
Art Unit: 3991

     Since, Applicants have disclaimed priority to the parent applications 10/209,169; 09/57,782; 09/318,530 and 08/909,513, the §120 priority of the 10/717,217 application was limited to the provisional application filed on 4/10/2003. Applicants broke the chain of priority between the 10/717,217 and 10/209,169.

     <u>As such, the present `381 patent claims are entitled to the filing date of the provisional application filed on 4/10/2003.</u>

     Further, the claim to priority in the 13/215,073 application (the current `381 patent application) is defective. Since applicants have cancelled the § 120 priority of the 10/717,217 application to the parent applications 10/209,169; 09/57,782; 09/318,530 and 08/909,513 during the prosecution of the 10/717,217 application (See the amendment filed on 9/2/2008), the 10/717,217 is not continuation-in-part of 10/209,169 application. All the continuing applications filed after 10/717,217 have 35 USC § 120 priority date no earlier than the provisional application filing date of 4/10/2003. The present `381 patent application (13/215,073) cannot have 35 USC §120 priority claim earlier than the priority claim of the 10/717,217, that is the filing date of the provisional application filed on 4/10/2003. <u>The effective filing date of present `381 patent claims is 4/10/2003.</u>

### *The Harris `381 Patented Invention and Claim Interpretation*

     *During reexamination, claims are given the broadest reasonable interpretation consistent with the specification and limitations in the specification are not read into the claims (in re Yamamoto, 740 F.2d 1569, 222 USPQ 934 (Fed. Cir. 1984).*

     The `381 patent invention was drawn to 14 claims. New claims 15-36 are added by the amendment filed on 12/12/12. The independent claims 1 and 15 recite a human dietary composition.

The independent claims 1 and 15 are appended below.

**Claim 1**. A human dietary supplement comprising at least one of:
an amino acid wherein said amino acid is beta-alanine that is not part of a dipeptide, polypeptide or oligopeptide;
an ester of beta-alanine that is not part of a dipeptide, polypeptide or oligopeptide; **or**
an amide of beta-alanine that is not part of a dipeptide polypeptide or oligopeptide.

**Claim 15** (New) (12/12/12 amendment). A human dietary supplement comprising:
a) beta-alanine as a free amino acid that is not part of a dipeptide, polypeptide or an oligopeptide;
b) an amide of beta-alanine that is not part of a dipeptide, polypeptide or an oligopeptide; and
c) an ester of beta-alanine that is not part of a dipeptide, polypeptide or an oligopeptide,

Application/Control Number: 95/002,001                                    Page 7
Art Unit: 3991

wherein the human dietary supplement contains between 0.4g and 16.0g of beta-alanine per dose.

> If the body of a claim fully and intrinsically sets forth all of the limitations of the claimed invention, and the preamble merely states, for example, the purpose or intended use of the invention, rather than any distinct definition of any of the claimed invention's limitations, then the preamble is not considered a limitation and is of no significance to claim construction. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305, 51 USPQ2d 1161, 1165 (Fed. Cir. 1999). See also *Rowe v. Dror*, 112 F.3d 473, 478, 42 USPQ2d 1550, 1553 (Fed. Cir. 1997). See MPEP 2111.02

In the present claims the recitation "a human dietary supplement", is not construed to be a limitation since it states the purpose or intended use of the composition. Thus, any prior art composition containing beta-alanine, even if *not* disclosed for use as a "human dietary supplement," is anticipating prior art to claims of the '381 Patent, because "human dietary supplement" is only in the claim preamble.

Claims 13, 14, 32, 33, 34 and 36 recite the intended and inherent functions and properties of the claimed composition.

Claims 30 and 31 recite the directions to use the composition.

Claim 35 recites "a container comprising at least 224 grams of beta-alanine."

The `381 patent contemplated supplying beta-alanine to humans by topical creams (see column 9, lines 21-23, 28-29).

1.     **The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.**

### *Rejections Adopted in the Non-final office action*

In the ACP, Grounds # 1-4 and 7-12 are maintained and re rewritten to address new claims.

**<u>Ground #5:</u>** Third Party requester asserted that claim 1 of the `381 patent is anticipated by De Lacharriere patents (the `068 and the `559 patent) (see 5/31/12 Request pages 22-24).

Application/Control Number: 95/002,001                                    Page 8
Art Unit: 3991

The proposed anticipation rejection of claim 1 was <u>adopted</u> in the non-final action and maintained in the ACP and in this RAN.

The rejection is reiterated below.

**Claim 1 is rejected under 35 U.S.C. 102(e) as being anticipated by De Lacharriere patents.**

De Lacharriere patents `068 and `559 have identical specification and disclose beta-alanine in a composition. For example, see De Lacharriere `559 patent at column 4, lines 3-5.

***Ground #6***: Third Party requester asserted that claim 1 of the `381 patent is anticipated by Wu (2002) (see 5/31/12 Request page 24).

The proposed anticipation rejection of claim 1 was <u>adopted</u> in the non-final office action and maintained in the ACP and in this RAN.

The rejection is reiterated below.

**Claim 1 is rejected under 35 U.S.C. 102(a) as being anticipated by Wu (April 11, 2002).**

Wu teaches chicken, beef, clam and eel essences comprising free amino acids including beta-alanine (see page 172 and Tables 2 and 3). Thus, Wu discloses a dietary supplement comprising beta-alanine that is not a part of a dipeptide, polypeptide or oligopeptide.

### *Rejections Adopted in the ACP*

<u>**Note**</u> <u>that the amendment filed after ACP on 8/23/13 is not entered. Therefore, the rejections of claims 15-36 are maintained for the same reasons set forth in the ACP.</u>

<u>Ground # 13</u>: Third Party requester asserted that new claims 15-36 do not find support in the specification (see 11/28/12 Response page 4).

<u>The rejection was adopted in the ACP and maintained in this RAN.</u>

The rejection is reiterated below.

Claims 15-36 are rejected under 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention. This is a new matter rejection.

New claims 15-36 are added by the amendment filed on 12/12/12.

Application/Control Number: 95/002,001                                    Page 9
Art Unit: 3991

The independent claim 15 recites "a human dietary supplement comprising: a) beta-alanine as a free amino acid that is not part of a dipeptide, polypeptide or an oligopeptide; b) an amide of beta-alanine that is not part of a dipeptide, polypeptide or an oligopeptide; **and** c) an ester of beta-alanine that is not part of a dipeptide, polypeptide or an oligopeptide, wherein the human dietary supplement contains between 0.4g and 16.0g of beta-alanine per dose."

*Patent Owner stated that the newly added claims are within the scope of the original claims. Support for the claims is found in the patented claims, the claims as filed, throughout the specification and file history (including the preliminary amendment) (see page 1 of the 10/29/12 response).*

**A.**      A composition comprising all three of forms of beta-alanine as required in the present claim 15 is considered to be new matter, since this composition finds no support in the original disclosure.

The present `381 patent discloses compositions comprising an amino acid or an active derivative thereof selected from group consisting of a beta-alanine, a chemical derivative of beta-alanine and a peptide comprising beta-alanine, or analogs, mimetics thereof (see column 3, lines 52-56). The compositions comprise beta-alanine or derivatives of beta-alanine (see column 10). Examples 2-5 disclose administering compositions comprising beta-alanine.

The issued claim 1 or the original claim 1(claims as filed 8/22/11) recite a composition comprising **at least one of** a) beta-alanine that is not part of a dipeptide, polypeptide or an oligopeptide; b) an amide of beta-alanine that is not part of a dipeptide, polypeptide or an oligopeptide; **or** c) an ester of beta-alanine.

The newly added claim 15 composition comprises beta-alanine, an amide of beta-alanine **and** an ester of beta-alanine, which find support neither in the originally filed specification nor in the original claims. The `381 patent does not disclose compositions comprising all three components, a) beta-alanine, b) an amide of beta-alanine **and** c) an ester of beta-alanine as required in the new claim.

**B.**      Claim 15 recites that the human dietary supplement contains between 0.4g and 16.0 g of beta-alanine per dose, which has no support in the `381 disclosure.

The `381 patent discloses that beta-alanine dosage can be between about 1 mg and about 200 mg per kilogram body weight (see column 9, lines 31-33). The `381 patent also discloses that in an 80 kilogram person, suitable dosages per day can be between 0.08 grams to 16.0 grams of beta-alanine (see column 9, lines 50-51). Example 2 discloses 10-40 mgs per kilogram body weight of beta-alanine is given (see column 14). Example 3 discloses administering 10 mgs per kilogram body weight of beta-alanine per day (see column 15). Example 4 discloses administering 40 mgs per kilogram body weight of beta-alanine per day (see column 16). The claimed range of beta-alanine per dose finds support neither in the originally filed specification nor in the original claims.

**C.**      New claim 35 recites that "beta-alanine is supplied in a container comprising at least 224 grams of beta-alanine" which has no support in the original disclosure of the `381 patent.

The limitation "container comprising at least 224 grams of beta-alanine" finds support neither in the originally filed specification nor in the original claims.

<u>Ground # 14:</u> Third Party requester asserted that new claims 30-34 and 36 do not find support in the specification (see 11/28/12 Response pages 39-40).

> The rejection was adopted in the ACP and maintained in this RAN.

The rejection is reiterated below.

Claims 30-34 and 36 are rejected under 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

Claim 30 is dependent on composition of claim 15 and recites that "one or more doses of the human dietary supplement are ingested daily", which is vague and indefinite. Since the claim is drawn to a composition and the limitation is adding method limitation to the composition.

Claim 31 is dependent on composition of 15 and recites that "wherein an end user is directed to ingest the human dietary supplement for at least 14 days", which is considered to be giving instructions to the user. This is indefinite since the claim is drawn to a composition, not to a method of use.

Claims 32-34 and 36 are dependent on composition of 1 and recite the functional properties of the composition and states the form of the composition supplied. The claims are indefinite, since it is not clear whether the claims are drawn to a composition, or the function of the composition or the physical form of the composition. Further claim 36 recites that the "beta-alanine is supplied with taurine." It is not clear whether Patent Owner meant that the composition further comprises taurine or two separate compositions comprising beta-alanine and taurine are supplied.

<u>Ground #15</u>: Third Party requester asserted that claims 1-14 of the `381 patent and new claims 15-36 are anticipated by the US Patent 5,965,596 (the `596 patent) (see 5/31/12 Request pages 12-19 and 11/28/12 Response page 25).

The proposed anticipatory rejection of claims 1-14 was <u>adopted</u> in the previous office action in Ground#1. In this office action the rejection is modified to include new claims 15-34.

> The rejection was adopted in the ACP and maintained in this RAN.

The rejection is reiterated below.

Claims 1-14 and new claims 15-34 are rejected under 35 U.S.C. 102(b) as being anticipated by the `596 patent.

Since the earliest effective filing date for the '381 Patent claims is April 10, 2003, any patent or printed publication disclosing the invention claimed in the '381 Patent dated prior to April 10, 2003 is prior art rendering the '381 Patent invalid under 35 U.S.C. § 102(b). Thus, the `596 patent issued on October 12, 1999 is 35 USC 102(b) prior art to the claims of the `381 patent.

**Claims 1, 15**

The `596 patent discloses a human dietary composition comprising beta-alanine. The composition can be ingested as a dietary supplement (see column 5, lines 46-47).

The composition comprises beta-alanine; and glucose or other simple carbohydrate (see column 6, lines 10-14). The composition includes mixtures of creatine and beta-alanine, creatine, beta-alanine and L-histidine or creatine and active derivatives of beta-alanine or L-histidine. Each of the beta-alanine or L-histidine can be individual amino acids, or components of dipeptides, oligopeptides, or polypeptides. The beta-alanine or L-histidine can be active derivatives. An active derivative is a compound derived from, or a precursor of, the substance that performs in the same or similar way in the body as substance and placed into the body. Examples include, for example, esters and amides (see column 2, lines 30-41). In another aspect, the invention features a composition consisting essentially of a peptide source including beta-alanine, between about 39 and about 99 percent by weight of a carbohydrate, and up to about 60 percent by weight of water (see column 3, lines 9-13).

New claim 15 is similar to claim 1 and recites the presence of all three forms of beta-alanine and the composition contains between 04g and 16.0g of beta-alanine per dose. As discussed above, the `596 patent discloses all the limitations of claim 1. The `596 also discloses mixture of beta-alanine. Additionally, the `596 patent discloses that in an 80 kilogram person, suitable dosages per day can be between 4.0g to 16.0 g of beta-alanine (see column 5, lines 56-57).

**Claims 2-4, 6, 7, 16, 18, 22 and 23**

The `596 patent discloses that the composition comprises glucose (a simple carbohydrate), insulin, or agents that stimulate production of insulin (see column 3, lines 9-13; column 5, lines 43-45 and column 6, lines 10-14).

**Claims 5, 20**

The `596 patent discloses that the composition further comprises L-histidine (see column 5, lines 36-39 and composition (d) in column 6, lines 14-18).

**Claims 8-9, 24-25**

The `596 patent discloses that the composition further comprises creatine monohydrate (see compositions (a) and (b) in column 6, lines 2-9).

**Claims 10-12, 27-29**

The `596 patent discloses that the composition can be in solid form or liquid form or the form of suspension for infusion into the body (see column 5, lines 60-63).

**Claims 13, 32-34**

The `596 patent discloses that the composition can be used to avoid or delay onset of muscular fatigue in humans (see column 3, lines 51-56). The `596 patent discloses that administering beta-alanine and taurine together (see Example 3).

**Claim 14**

The `596 patent discloses that the composition is effective in protecting the function of a creatine-phosphorylcreatine system (see column 1, lines 50-55; column 3, lines 41-45 and claim 5).

**Claims 19, 21, 26**

The `596 patent discloses that in an 80 kilogram person, suitable dosages per day can be between 4.0g to 16.0 g of beta-alanine. 0.4g to 16.0g creatine monohydrate, 0.08g to 8.0g of L-histidine, or 40g to 160 g of glucose or other simple carbohydrate (see column 5, lines 56-60).

**Claims 30, 31**

The `596 patent teaches administering three doses of 40 mg per kilogram body weight of beta-alanine per day for two weeks (14 days) (see Example 4, in column 12).

Ground #16: Third Party requester asserted that claim 1 of the `381 patent is anticipated by Asatoor and new claims 15, 20-21 are anticipated by Asatoor (see 5/31/12 Request pages 12-19 and 11/28/12 Response page 38).

The proposed rejection is **not adopted** for new claims 15, 20 and 21, since Asatoor does not disclose all three forms of beta-alanine as recited in claim 15.

The proposed anticipatory rejection of claim 1 was <u>adopted</u> in the previous office action.

<u>The rejection was adopted in the ACP and maintained in this RAN.</u>

The rejection is reiterated below.

Claim 1 is rejected under 35 U.S.C. 102(b) as being anticipated by Asatoor (Gut, 1970, 11, 250-254).

Asatoor discloses experiments in which five human test subjects ingested a dietary composition (a mixture) comprising beta-alanine and L-histidine (free amino acids) (see the Abstract and Methods). The composition is not part of a dipeptide, polypeptide or oligopeptide, since Asatoor discloses that the composition is a mixture of two amino acids. Asatoor teaches that the serum levels are compared in five human subjects after ingestion of dipeptide carnosine (β-alanyl-L-histidine) and after equivalent amounts of the constituent free amino acids (see Abstract). Further, for the reasons discussed in the claim interpretation the preamble "human dietary supplement" is not accorded patentable weight. Thus, Asatoor's disclosure of individual amino acid (beta-alanine and L-histidine) anticipates the present claim 1.

<u>Ground #17:</u> Third Party requester asserted that claim 1 of the `381 patent, and new claims 15, 32-34 are anticipated by EP `593 (see 5/31/12 Request pages 12-19 and 11/28/12 Response page 38).

The proposed rejection is **not adopted** for new claims 15, since EP `593 does not disclose all three forms of beta-alanine as recited in claim 15.

The proposed anticipatory rejection of claim 1-4 was <u>adopted</u> in the previous office action. In this office action the rejection is modified to include the new claims 32-34 and 36.

<u>The rejection was adopted in the ACP and maintained in this RAN.</u>

The rejection is reiterated below.

Claims 1-4, 32-34 and 36 are rejected under 35 U.S.C. 102(b) as being anticipated by EP `593.

EP '593 discloses human dietary supplements containing beta-alanine that are not part of a dipeptide, polypeptide or oligopeptide (see English Language translation 0001 and 0011-1116 and claims). EP `593 also discloses a composition comprising beta-alanine and further glucose (a simple carbohydrate) (see 0016). EP `593 discloses a novel composition for use in therapy, particularly a combination of amino acid based on the one hand, and vitamins, on the other hand, can be used in therapeutic oncology (see 0001). EP `593 teaches that it has now been found that a composition containing [beta]-alanine in combination with various vitamins, has properties allowing its application in

therapy for the treatment of cancer, whereas no comparable activity is observed when each of these compounds is used in isolation (0011). The present invention thus provides a new composition based on [beta]-alanine and vitamins, used to treat cancer (0012). The new composition in accordance with the present invention comprises at least one vitamin and [beta]-alanine represented by general formula (I): H2N- (CH2) 2- COOH (I) or a salt thereof acid or base (0013).  More particularly, the composition according to the invention comprises the [beta]-alanine of the formula I or more vitamins selected from vitamin A, vitamin B, vitamin B2, pyridoxine, ascorbic acid, tocopherol, vitamin D2, and vitamin PP (0014).  Beta-alanine can be used individually or, where appropriate, in combination with one or more other amino acids, for example 5-alanine and glycine, or beta-alanine, and taurine can be combined (0015). In addition to vitamins and the amino acid indicated above, the composition may advantageously also contain additives such as glucose, beta-carotene and other vitamins such as biotin and vitamin B12 (0016).

Further, the compositions of EP `593 inherently are effective in delaying fatigue in humans, since the compositions comprises vitamins and glucose, thus read on the present claims 32-34. Regarding claim 36, EP `593 discloses that the composition further comprise taurine (see 0015).

Ground #18: Third Party requester asserted that claim 1 of the `381 patent and new claims 15, 20-21 are anticipated by Gardner (see 5/31/12 Request page 22 and 11/28/12 Response pages 38-39).

The proposed rejection is **not adopted** for new claims 15, since Gardner does not disclose all three forms of beta-alanine as recited in claim 15.

The proposed anticipatory rejection of claim 1 was adopted in the previous office action.

The rejection was adopted in the ACP and maintained in this RAN.

The rejection is reiterated below.

Claim 1 is rejected under 35 U.S.C. 102(b) as being anticipated by Gardner.

Gardner discloses experiments in which a test meal comprising 2 g β-alanine plus 2 g of histidine was fed to a human subject (see page 413). The amount of 2 g of beta-alanine is within the claimed range. Gardner teaches ingesting 2g of L-histidine (see page 413). Thus, Gardner anticipates the present claim 1.

Ground #19: Third Party requester asserted that claims 1-5, 7-8 and 10-14 of the `381 patent and new claims 15-18, 20, 22-25, 27-29 are obvious over Setra in view of Asatoor (see 5/31/12 Request pages 26-28, 31-34 and 11/28/12 response page 38).

The proposed obviousness rejection of claims 1-5, 7-8 and 10-14 was adopted in the previous office action. In this office action the rejection is modified to include new claims 15-18, 20, 23-24, 27-29 and 32-34.

The rejection was adopted in the ACP and maintained in this RAN.

The rejection is reiterated below.

Claims 1-5, 7-8, 10-18, 20, 23-24, 27-29 and 32-34 are rejected under 35 U.S.C. 103(a) as being unpatentable over Setra (EP `787) in view of Asatoor.

Setra discloses pharmaceutical, dietetic or veterinary compositions containing carnosine or peptides related thereto as the active ingredient (see page 2 lines 28-34). In particular, Setra discusses the known beneficial properties of these compositions when they are ingested. The compositions are said to secure the known benefits of carnosine (a dipeptide, namely 13-alanyl-L-histidine, formed from the amino acids β-alanine and L-histidine) (see page 2, lines 4-5), including carnosine's ability to prevent uncontrolled proton release in the cell and thus a drop in cellular pH and thus prevent "metabolic acidosis" and its consequences, i.e. muscular fatigue and weakness (see page 2, lines 3-13). Example 1 discloses compositions comprising Carnosine, Histidine, Carnitine, Creatine, Glucose and Flavoring agents (see page 2).

Setra does not teach a composition comprising beta-alanine. However, Asatoor in the same field of endeavor discloses a dietary composition (a mixture) comprising beta-alanine and L-histidine (free amino acids) (see the Abstract and Methods). Asatoor discloses that the absorption of the free amino acids (beta-alanine or L-histidine) is significantly more rapid than the di-peptide (carnosine) (see pages 250 and 252). Thus it would have been obvious to a person of ordinary skill in the art at the time of the invention to include beta-alanine, a known non-essential amino acid and a precursor of carnosine, alone or together with L-histidine in the compositions of Setra because Asatoor teaches the rapid intake of free amino acid beta-alanine. Regarding claim 15, Asatoor discloses that 0.286 m mol of carnosine, and, separately, that amount of its constituent amino acids beta-alanine and L-histidine were ingested by each subject per kg of body weight (see page 251, first col., lines 7-8). The molecular weight of beta-alanine is 89.01 g/m mol and therefore the dosage of beta-alanine is (0.286) (89.01) = 25.6 mg beta-alanine/kg of body weight. The dose for an 80 kg person would therefore be 25.6 x 80/1000 = 2.05 grams. This is within the range recited in claim 15. Further, it would have been obvious to include all three different forms of beta-alanine, since these were chemical derivatives of beta-alanine disclosed by Asatoor.

Regarding claims 2-4, 16-18, the compositions of Setra includes glucose (a simple carbohydrate) (see Example 1). Regarding claims 5 and 20, both Setra and Asatoor teach the compositions additionally comprising L-histidine. Regarding claims 7 and 23, glucose is the most common insulin stimulating agent. Regarding claims 8 and 24, the composition of Setra comprises creatine. Regarding claims 10-12 and 27-29, Setra teaches that the compositions are either a liquid, a solid or a suspension. Claims 13-14 and 32-34 recite the inherent function of the composition. The composition disclosed in Setra and Asatoor will have those inherent functions falling within the scope of the present claims.

Ground #20: Third Party requester asserted that claims 1-5, 7-8 and 10-14 of the `381 patent and new claims 15-18, 20, 23-24, 27-29 and 32-34 are obvious over Setra in view of Gardner (see 5/31/12 Request pages 26-27, 31-34 and 11/2/12 page 38).

The proposed obviousness rejection of claims 1-5, 7-8 and 10-14 was adopted in the previous office action. In this office action the rejection is modified to include new claims 15-18, 20, 23-24, 27-29 and 32-34.

The rejection was adopted in the ACP and maintained in this RAN.

The rejection is reiterated below.

Claims 1-5, 7-8, 10-18, 20, 23-24, 27-29 and 32-34 are rejected under 35 U.S.C. 103(a) as being unpatentable over Setra (EP 787) in view of Gardner.

Setra discloses pharmaceutical, dietetic or veterinary compositions containing carnosine or peptides related thereto as the active ingredient (see page 2 lines 28-34). In particular, Setra discusses the known beneficial properties of these compositions when they are ingested. The compositions are said to secure the known benefits of carnosine (a dipeptide, namely 13-alanyl-L-histidine, formed from the amino acids β-alanine and L-histidine, (see page 2, lines 4-5), including carnosine's ability to prevent uncontrolled proton release in the cell and thus a drop in cellular pH and to thus prevent "metabolic acidosis" and its consequences, i.e. muscular fatigue and weakness (see page 2, lines 3-13). Example 1 discloses compositions comprising Carnosine, Histidine, Carnitine, Creatine, Glucose and Flavoring agents (see page 2).

Setra does not teach a composition comprising beta-alanine. However, Gardner discloses experiments in which a test meal comprising 2 g β-alanine plus 2 g of histidine was fed to a human subject (see page 413). Thus it would have been obvious to a person of ordinary skill in the art at the time of the invention to include beta-alanine, a known non-essential amino acid and a precursor of carnosine, alone or together with L-histidine in the compositions of Setra.

Regarding claim 15, Asatoor discloses that 0.286 m mol of carnosine, and, separately, that amount of its constituent amino acids beta-alanine and L-histidine were ingested by each subject per kg of body weight (see page 251, first col., lines 7-8). The molecular weight of beta-alanine is 89.01 g/m mol and therefore the dosage of beta-alanine is (0.286) (89.01) = 25.6 mg beta-alanine/kg of body weight. The dose for an 80 kg person would therefore be 25.6 x 80/1000 = 2.05 grams. This is within the range recited in claim 15. Further, it would have been obvious to include all three different forms of beta-alanine, since these were chemical derivatives of beta-alanine disclosed by Gardner.

Regarding claims 2-4 and 16-18, the compositions of Setra include glucose (a simple carbohydrate) (see Example 1). Regarding claims 5 and 20, both Setra and Gardner teach the compositions additionally comprising L-histidine. Regarding claims 7 and 23, glucose is the most common insulin stimulating agent. Regarding claims 8 and 24, the composition of Setra comprises creatine. Regarding claims 10-12 and 27-29, Setra teaches that the compositions are either liquid, solid form or a suspension. Claims 13-14 and 32-34 recite the inherent function of the composition. The composition disclosed in Setra and Gardner will have those inherent functions falling within the scope of the present claims.

Ground #21: Third Party requester asserted that claim 6 of the `381 patent and new claim 22 are obvious over Setra in view of Asatoor and Biolo (see 5/31/12 Request pages 26-28, 31-32 and 11/28/12 response page 38).

The proposed obviousness rejection of claim 6 was adopted in the previous office action. In this office action the rejection is modified to include new claim 22.

Application/Control Number: 95/002,001                                            Page 16
Art Unit: 3991

<u>The rejection was adopted in the ACP and maintained in this RAN.</u>

The rejection is reiterated below.

Claims 6 and 22 rejected under 35 U.S.C. 103(a) as being unpatentable over Setra and Asatoor as applied to claims 1 and 15 in Ground # 19, and further in view of Biolo.

The teachings of Setra and Asatoor are as discussed above. The combined teachings of Setra and Asatoor do not teach that the composition further comprises insulin. However, Biolo teaches that insulin is the most important regulator of protein metabolism (see the Abstract). Thus it would have been obvious to a person of ordinary skill in the art at the time of the invention to include insulin to the combined teachings of Setra and Asatoor composition, since Biolo teaches that insulin is a regulator of protein metabolism.

<u>Ground #22</u>: Third Party requester asserted that claim 6 of the `381 patent and new claim 22 are obvious over Setra in view of Gardner and Biolo (see 5/31/12 Request pages 26-28, 31-32 and 11/28/12 response page 38).

The proposed obviousness rejection of claim 6 was <u>adopted</u> in the previous office action. In this office action the rejection is modified to include new claim 22.

<u>The rejection was adopted in the ACP and maintained in this RAN.</u>

The rejection is reiterated below.

Claims 6 and 22 rejected under 35 U.S.C. 103(a) as being unpatentable over Setra and Gardner as applied to claims 1 and 15 in Ground # 20, and further in view of Biolo.

The teachings of Setra and Gardner are as discussed above. The combined teachings of Setra and Gardner do not teach that the composition further comprises insulin. However, Biolo teaches that insulin is the most important regulator of protein metabolism (see the Abstract). Thus it would have been obvious to a person of ordinary skill in the art at the time of the invention to include insulin to the combined teachings of Setra and Gardner composition, since Biolo teaches that insulin is a regulator of protein metabolism.

<u>Ground #23</u>: Third Party requester asserted that claim 9 of the `381 patent and new claim 25 are obvious over Setra in view of Asatoor and Casey (see 5/31/12 Request pages 26-28, 31-33 and 11/28/12 response page 38).

The proposed obviousness rejection of claim 9 is <u>adopted</u> in the previous office action. In this office action the rejection is modified to include new claim 25.

<u>The rejection was adopted in the ACP and maintained in this RAN.</u>

The rejection is reiterated below.

Claims 9 and 25 rejected under 35 U.S.C. 103(a) as being unpatentable over Setra and Asatoor as applied to claims 1 and 15 in Ground #19, and further in view of Casey.

The teachings of Setra and Asatoor are as discussed above. The combined teachings of Setra and Asatoor do not teach that the composition further comprises creatine monohydrate. However, Casey teaches that creatine is creatine monohydrate. Thus it would have been obvious to a person of ordinary skill in the art at the time of the invention to include creatine monohydrate to the combined teachings of Setra and Asatoor composition, since Casey teaches that creatine monohydrate is a common form of creatine.

Ground #24: Third Party requester asserted that claim 9 of the `381 patent and new claims 25-26 are obvious over Setra in view of Gardner and Casey (see 5/31/12 Request pages 26-28, 31-33 and 11/28/12 response page 38).

The proposed obviousness rejection of claim 9 is adopted in the previous office action. In this office action the rejection is modified to include new claims 25-26.

The rejection was adopted in the ACP and maintained in this RAN.

The rejection is reiterated below.

Claims 9 and 25-26 are rejected under 35 U.S.C. 103(a) as being unpatentable over Setra and Gardner as applied to claims 1 and 15 in Ground #20 and further in view of Casey.

The teachings of Setra and Gardner are as discussed above. The combined teachings of Setra and Gardner do not teach that the composition further comprises creatine monohydrate. However, Casey teaches that creatine is creatine monohydrate. Thus it would have been obvious to a person of ordinary skill in the art at the time of the invention to include creatine monohydrate to the combined teachings of Setra and Gardner composition, since Casey teaches that creatine monohydrate is a common form of creatine. Further, Setra discloses single dose compositions containing 0.3g and 0.75 g of creatine (see examples). Casey discloses administering 20 g creatine monohydrate /day. Thus, it would have been obvious to a person of ordinary skill in the art to include creating monohydrate between 0.3g and 20 g of creatine monohydrate.

Ground #25: Third Party requester asserted that claim 19 of the `381 patent is anticipated by Sports Science Library (Exhibit F) (see 11/28/12 response page 39).

The proposed obviousness rejection of claim 19 was **not-adopted** in the ACP and in this RAN.

Application/Control Number: 95/002,001                                    Page 18
Art Unit: 3991

Claim 19 is indirectly dependent on claim 15, which includes the limitations of claims 15 and 16. Since the Requester has not shown that Sports Science Library teaches the limitations of claims 15, 16, the reference cannot anticipate claim 19.

### *Response to Arguments*

**Note** that the amendment filed after ACP on 8/23/13 is not entered. Therefore, Patent Owner's response and Kunin Declaration filed on 8/23/13 are considered only to the extent they are pertinent to the original claims and the 12/12/12 amendment.

### *Priority*

Patent Owner's response (see pages 10-14 of the response filed on 8/23/13)

Patent Owner argued that the office must address sequentially the priority of the `240 application at the time of its filing 8/29/2008 to determine the priority; not the priority of the `217 application on or after 9/2/2008. All three prongs of § 120 were met at the time of filing of the `240 application on 8/29/2008. Patent Owner cited Kunin's Declaration in support of the arguments.

Examiner's Decision

For the reasons discussed in the previous office actions, the original claims 1-14 of the present `381 patent and newly added (12/12/12 amendment) claims 15-36 are entitled to April 10, 2003, the filing date of the provisional application 60/462,238 for the prior art purposes.

- The priority claim in the `073 application (application that resulted in the present `381 patent) is incorrect. The front page of the present `381 patent lists that 12/231,240 (the 6th application) filed on 8/29/2008, is a continuation-in-part of 10/209,169 (4th application) filed on 7/30/2002 (now US Patent 6,680,294 issued on 1/20/2004). Since the `240 application (6th application) was not filed during the pendency of the `169 application (4th application), the `240 application cannot claim priority to the `169 application.

- Further, the claimed invention in the `217 application does not find support in the `169 application or the earlier applications. Thus, the `217 application does not get priority to the filing date of `169 application.  Additionally, applicants broke the chain of priority between the 10/717,217 and 10/209,169. Since, applicants have disclaimed priority to the

parent applications 10/209,169; 09/57,782; 09/318,530 and 08/909,513, the §120 priority

of the 10/717,217 application was limited to the provisional application filed on

4/10/2003 (see the amendment filed on 9/2/2008 in the `217 application).

According to 35 USC § 120, the later filed application must contain "a specific reference

to the earlier filed application" such that the application is entitled to the benefit of an earlier

filed application. However, in the present case the amendment filed on 9/2/2008 in the `217

application (later filed application) removes specific reference to the `169 application (earlier

application), thus `217 is not entitled to the benefit of the `169 application, thus the priority line

is broken for the `217 application and continuation applications filed based on the `217

application. In fact, the amendment in the `217 application breaks the link between the `169

application and the `240 application. Thus <u>the effective filing date of present claims is 4/10/2003</u>

<u>for prior art purpose.</u>


*Patent Owner argued that all three prongs of § 120 were met at the time of filing of the `240 application (6th application) on 8/29/2008. The office should ask only if the `240 application met these three prongs on the filing date of 8/29/2008 (see page 11).*

Patent Owner's arguments and Kunin's Declaration are fully considered and are not

persuasive for the following reasons.

As discussed above, the `240 application (*the 6th application*) is a continuation of the

`217 application (*the 5th application*), which is a continuation-in-part of `169 application (*the 4th*

*application*).

Under 35 USC 120, there are several conditions for later-filed applications to receive the
benefit of the filing date of a prior-filed application (see MPEP 201.11).

Each application in the chain of related patent applications must meet the required
conditions set forth in the § 120 to receive the benefit of the filing date of prior filed application.

(A) The prior-filed application must disclose the claimed invention of the later-filed application in the
manner provided by the first paragraph of 35 U.S.C. 112 for a benefit claim under 35 U.S.C. **120, 121**, or
**365**(c), and also for a benefit claim under 35 U.S.C. 119(e). (See MPEP 201.11)

1) In the present case, since the *6th* application is a continuation of the *5th* application, the

disclosure in both the 6th application and the 5th application is considered to be the same (see

Application/Control Number: 95/002,001                                      Page 20
Art Unit: 3991

MPEP 201.07). It is agreed that the 6th application meets Condition (A) to get the priority to the 5th application.

> If there is a continuous chain of copending nonprovisional applications, each copending application must disclose the claimed invention of the later-filed application in the manner provided by the first paragraph of 35 U.S.C. **112**, in order for the later-filed application to be entitled to the benefit of the earliest filing date. (see MPEP 201.11).

However, the claimed subject matter of the 5th application does not find support in the 4th application. Thus, the 5th application fails to meet the § 120 requirement. Accordingly, the 5th application (10/717,217) does not get priority date of the 4th application (10/209,169 application). Accordingly, since the 5th application (the `217 application) does not get priority to the `169 application, the 6th application (the `240 application) also does not get the priority date of the `169 application.

> (B) The later-filed application must be copending with the prior-filed nonprovisional application for a benefit claim under 35 U.S.C. **120**, **121**, or **365**(c). For a benefit claim under 35 U.S.C. **119**(e), the later-filed application must be filed not later than 12 months after the filing date of the prior provisional application. (See MPEP 201.11).

2) The 4th application (the `169 application) was issued on 1/20/2004 prior to the filing date of the 6th application (the `240 application). Thus, the 6th application is not co-pending with the 4th application and cannot claim priority to the 4th application directly without the 5th application.

> (C) The later-filed application must contain a reference to the prior-filed application in the first sentence(s) of the specification or in an application data sheet, for a benefit claim under 35 U.S.C. **120**, **121**, or **365**(c), and also for a benefit claim under 35 U.S.C. **119**(e).

3) The 5th application (the `217 application) does not have a reference to the 4th application (the `169 application), since applicants have disclaimed priority to the parent application 10/209,169 (4th application) (see the amendment filed on 9/2/2008 in the 5th application).

As discussed above, the effective filing date of the 5th application is the filing date of the provisional application 60/462,238 filing date. Accordingly, in the present case (the `381 patent)

the priority date is determined to be the effective filing date of the 10/717,217 application (the 5th application).

*Patent Owner argued that the 6th application met all prongs of 35 USC 120 at the time of the filing on 8/29/08, which was prior to the 9/2/2008 amendment filed in the 5th application.*

The `240 application (6th application) was filed during the pendency of the `217 application (5th application), both the applications were copending. However, by the amendment in the `217 application (9/2/08), applicants have deleted the priority to the 4th application. By that amendment the priority in the 5th application was limited to the provisional application filed on 4/10/2003. It is irrelevant when the amendment was filed, the fact is that the chain of priority between the 5th application (the `217 application) and the 4th application (the `169 application) was disclaimed (or broken) by applicants. Thus, the 6th application (the `240 application) gets the priority date of the 5th application only.

Kunin's Declaration argued that the priority date in the `240 application with an analogy to the change of Inventorship (see ¶¶ 27-28). However, the example in ¶ 28 is related to the inventorship. The analogy does not apply to the present case, since the issue is not related to change of inventorship, or whether the 6th application (the `240 application) is a divisional application filed as a result of restriction requirement in the 5th application (the `217 application).

### *Claim Interpretation*

If the body of a claim fully and intrinsically sets forth all of the limitations of the claimed invention, and the preamble merely states, for example, the purpose or intended use of the invention, rather than any distinct definition of any of the claimed invention's limitations, then the preamble is not considered a limitation and is of no significance to claim construction. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305, 51 USPQ2d 1161, 1165 (Fed. Cir. 1999). See also *Rowe v. Dror*, 112 F.3d 473, 478, 42 USPQ2d 1550, 1553 (Fed. Cir. 1997). See MPEP 2111.02

In the present claims the recitation "a human dietary supplement", is not construed to be a limitation since it states the purpose or intended use of the composition. Thus, any prior art composition containing beta-alanine, even if *not* disclosed for use as a "human dietary supplement," is anticipating prior art to claims of the '381 Patent, because "human dietary supplement" is only in the claim preamble.

<u>Patent Owner's response</u> (see pages 14-26 of the response filed on 8/23/13)

Patent Owner reiterated previous arguments and cited Kunin's Declaration in support of the arguments. Patent Owner argued that the preamble is a limitation and states more than an intended purpose. The preliminary amendment was filed to overcome any art as related to the invention and was used by both the Patent Owner and Examiner to distinguish the claimed invention over prior art. The preamble phrase "human dietary supplement" of claim 1 is further limited by claims 2-14, for example, and the phrase "human dietary supplement" provides antecedent basis for the further limitations of claims 2-14. <u>Patent Owner further argued that the non-inherent, functional limitations in the claims distinguish them over prior art and cited Kunin Declaration (see pages 21-23).</u>

Patent Owner argued that the Harris and Sale Declarations (filed on 10/29/12) support the preamble as a limitation and defeat a conclusion of inherent functions of beta-alanine, which is supported by the science discussed in Tallon and Balcombe.

Patent Owner concluded that "for the reasons of record, the preamble phrase "human dietary supplement" should be construed as an addition to the human diet, ingested as a pill, capsule, tablet, powder or liquid, which is not natural or conventional food and that increases the function of tissue when consumed, wherein the supplementation of the diet means a repeated event (i.e., multiple dosing) over time." Patent Owner cited Example 4 of the specification (see page 26).

<u>Examiner's comments</u>

As stated in the previous office action the preamble in claim 1 merely states the purpose of the composition. During the prosecution of the `073 application that resulted as the present patent, the preliminary amendment (8/22/2011) was not filed to overcome the art rejection or to distinguish the claims over prior art. The preamble was not used to distinguish the claimed invention over prior art. The preamble is not required since the claim (claim 1) describes a structurally complete invention such that the deletion of the preamble phrase does not affect the structure of the claimed invention. The preamble is not required to understand other terms in the body of the claim. The dependent claims do not add further requirement to the human dietary supplement of claim 1. Claims 13-14 recite functional limitations of the composition. It is agreed that the composition is an addition to the human diet. However, claim 1 does not recite any of the limitations argued by the Patent Owner, such as "ingested as a pill, capsule, tablet, powder or liquid, which is not natural or conventional food and that increases the function of tissue when

Application/Control Number: 95/002,001                                   Page 23
Art Unit: 3991

consumed, wherein the supplementation of the diet means a repeated event (i.e., multiple dosing)
over time." These limitations may have support in the specification in Example 4, however the
limitations from the specification are not read into the claim.

> During reexamination, claims are given the broadest reasonable interpretation consistent with the
> specification and limitations in the specification are not read into the claims (*In re Yamamoto*, 740 F.2d
> 1569, 222 USPQ 934 (Fed. Cir. 1984)). See MPEP 2258.

For the reasons discussed in the previous office action, Harris and Sale declaration are
not persuasive. The declarations state that the invention requires feeding the beta-alanine to
humans over a period of time such that the levels of the dipeptide (beta-alanine and L-histidine)
increased in the muscles and also increases a person's ability to exercise without fatigue (¶8).
The present claims are drawn to human dietary supplements (compositions), not to the method of
use of the composition. The Sale Declaration does not specifically address the claim
interpretation. The Sale declaration only stated that prior to the priority date of `381 patent, it
was not known that feeding the single amino acid beta-alanine to humans over a period of time
would increase the level of the dipeptide carnosine in the muscle or that it would increase a
person's ability to work-out without fatigue (¶7). Thus, the Sale declaration and the Harris
declaration address the method of use of the claimed composition and are not commensurate
with the scope of the present claims. Tallon (2005) (published after effective filing date of the
present invention), is a research interview regarding carnosine (beta-alanine/histidine)
supplementation use. Tallon states that by consuming 800 mg of beta-alanine four times a day
for five weeks, a significant increase of carnosine in the muscles is achieved. The use of beta-
alanine discussed in the Tallon publication is irrelevant to the compositions of the present claims.
Balcombe (2010) reviews the IntraXcell/Beta-alanine supplement of a specific brand. Balcombe
recommends the use of IntraXcell continuously for a minimum of 12 weeks. Thus, the later
published Balcombe and Tallon are irrelevant regarding compositions of the present claims. The
present claims do not recite multiple doses or using the composition for a longer period of time
to be effective.

### *Claim Rejections*

Application/Control Number: 95/002,001                                    Page 24
Art Unit: 3991

**Grounds # 1, reiterated in Ground# 15**

Patent Owner's response (see page 26 of the response filed on 8/23/13)

     Patent Owner asserted that the priority claim of the `381 patent is proper and unaffected by the priority amendment in the `376 patent that occurred after the `240 application was filed. Because the `240 application leading to the `084 patent properly established priority to the earlier filed `596 patent, claims 1-14 are not anticipated by the `596 patent. Patent Owner cited Kunin's Declaration in support of the argument.

Examiner's comments

     For the reasons discussed in the "Priority" above, the effective filing date of present `381 patent is 4/10/2003 for prior art purpose. Kunin's Declaration is not sufficient to overcome the rejection. Thus, the `596 patent anticipates the present claims for the reasons discussed in Grounds #1 and reiterated in Ground # 15.

**Grounds # 2 and 4 (reiterated in Ground # 16 and 18)**

Patent Owner's response (see pages 26-29 of the response filed on 8/23/13)

     Patent Owner argued that the recitation "human dietary supplement" is a claim limitation and must be given weight and cited Kunin Declaration in support of the argument. Neither Asatoor nor Gardner achieve the results of the `381 patent. Further, Asatoor and Gardner do not address dietary supplement and provides no evidence of amounts effective to increase the function of tissues or delay fatigue onset. They do not describe providing the beta-alanine dose over many days in a row as required by the science. Asatoor's single dose does not fit the definition of a dietary supplement. Patent Owner cited declarations of Craig Sale and Harris (filed on 10/29/12) in support of the arguments.

Examiner's comments

     Asatoor anticipates the present claim 1 for the reasons set forth in Ground# 2 and 16. Gardner anticipates the present claim 1 for the reasons set forth in Ground# 4 and 18.

     In response to Patent Owner's argument that the references fail to show certain features of applicant's invention, it is noted that the features upon which applicant relies (i.e., beta-alanine dose over many days in a row) are not recited in the rejected claim(s). Although the claims are

interpreted in light of the specification, limitations from the specification are not read into the claims. See *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993). The present claims are drawn to compositions, and it is irrelevant how these compositions are used or administered. The present claim 1 does not recite that the composition (human dietary supplement) comprising a specific dose of beta-alanine is required to be administered over a period of time. As discussed in the claim interpretation, the discussion of use of beta-alanine compositions in the later published Balcombe and Tallon is irrelevant to the compositions of the present claims. Further, the Declarations of Sale and Harris state that the compositions of Asatoor and Gardner would not work to delay the onset of fatigue. These arguments are not specific to the claimed composition. The Asatoor and Gardner references do not have to teach "how the compositions are provided to humans or the composition is administered over many days in a row", which are not the limitations of the present claim. The office has not used any inherency argument, since it is clear that Asatoor and Gardner clearly anticipate the composition of the present claim 1. As discussed in the claim interpretation above, Kunin's declaration is not sufficient to overcome the anticipation rejections.

**Grounds #3 and 17**

Patent Owner's response (see page 30 of the response filed on 18/23/13)

    Patent Owner argued that EP `593 used beta-alanine as a pharmaceutical composition to treat cancer, and cited Kunin's Declaration in support of the argument. EP `593 does not teach a human dietary supplement. EP `593 states that the compositions disclosed inhibit tumor cell division. The `381 patent disclaimed such pharmaceutical uses as being within the scope of the claims. Pharmaceutical use as a cancer treatment is not a dietary supplement, the invention purpose of the `381 Patent to increase function, increase the levels of carnosine in the muscles and delay the onset of muscle fatigue are not found in the reference. Patent Owner cited declarations of Craig Sale and Harris (filed on 10/29/12) in support of the arguments.

Examiner's comments

    Note that the amendment filed on 8/23/13 is not entered. Patent Owner's 8/23/13 response is considered only to the extent it is pertinent to the original claims and the 12/12/13 amendment.

Application/Control Number: 95/002,001                                      Page 26
Art Unit: 3991

EP `593 discloses a composition comprising beta-alanine and glucose (a simple
carbohydrate) (see 0016). Patent Owner argued that the pharmaceutical compositions are
disclaimed in the `381 patent. However, the preliminary amendment did not disclaim
pharmaceutical compositions (see the amendment filed on 8/22/11 in the `073 application).
However, since EP `593 anticipates the claimed composition, the intended use of the claimed
composition is irrelevant.

## Ground # 5

Patent Owner's response (see pages 30-31 of the response filed on 8/23/13)

Patent Owner argued that the De Lacharriere wrinkle cream does not anticipate the
human dietary supplement of the `381 patent. The wrinkle creams may likely contain
components that would not be suitable in the human diet. Patent Owner cited declarations of
Craig Sale and Harris (filed on 10/29/12) in support of the arguments.

Examiner's comments

The Declarations of Harris and Sale are fully considered and are addressed *infra*. De
Lacharriere patents `068 and `559 (De Lacharriere) disclose beta-alanine in a composition. For
example, see De Lacharriere `559 patent at column 4, lines 3-5. The present specification
discloses that the dietary supplements can be ingested, injected, or absorbed through the skin
through topical cream or patch (see the `381 patent column 9, lines 21-23 and 28-29). Thus, the
compositions disclosed by De Lacharriere clearly anticipate the claimed invention.

## Ground # 6

Patent Owner's response (see pages 31-32 of the response filed on 8/23/13)

Patent Owner argued that Wu is a 2002 reference that cannot be prior art against the `381
patent based on the proper priority claim;  subject matter of Wu was disclaimed in the
preliminary amendment; Wu does not teach a human dietary supplement.  Patent Owner cited
declarations of Craig Sale and Harris (filed on 10/29/12) in support of the arguments. Patent
Owner further cited Kunin's Declaration.

Examiner's comments

The Declarations of Harris, Sale and Kunin are fully considered and are addressed *infra*. The effective filing date of present `381 patent claims is determined to be 4/10/2003. Thus, the Wu publication is a prior art under 35 USC 102 (b). Wu reference anticipates the present claim 1, since the composition is not limited to specific amounts as argued by the Patent Owner.

**Grounds #7 and 19**

Patent Owner's response (see pages 32-36 of the response filed on 8/23/13)

Patent Owner argued that Setra and Asatoor cannot be combined to render the claimed invention obvious. Setra does not teach the use of beta-alanine as a single amino acid. The claims of the `381 patent are directed to a human dietary supplement comprising beta-alanine as a simple amino acid; the dipeptide is expressly disclaimed. Setra does not teach a dietary supplement comprising beta-alanine in an amount effective to increase the function of tissues and delay or avoid the inset of muscular fatigue. Patent Owner argued that office has relied on impermissible hindsight. Asatoor does not remedy the deficiencies of Setra. Asatoor does not teach human dietary supplement within the scope of the present claims. Asatoor uses beta-alanine for a different purpose compared to Serta's compounds. Patent Owner cited declarations of Craig Sale, Harris and Kunin in support of the arguments.

Examiner's comments

The Declarations of Harris, Sale and Kunin are fully considered and addressed *infra*. In response to Patent Owner's arguments against the references individually, one cannot show nonobviousness by attacking references individually where the rejections are based on combinations of references.  See *In re Keller*, 642 F.2d 413, 208 USPQ 871 (CCPA 1981); *In re Merck & Co.*, 800 F.2d 1091, 231 USPQ 375 (Fed. Cir.1986). In the present obviousness rejection, the teachings of Setra were combined with Asatoor. Setra discloses pharmaceutical, dietetic or veterinary compositions containing carnosine or peptides related thereto as the active ingredient. Asatoor in the same field of endeavor discloses a dietary composition (a mixture) comprising beta-alanine and L-histidine (free amino acids) (see the Abstract and Methods). Asatoor discloses that the absorption of the free amino acids (beta-alanine or L-histidine) is significantly more rapid than the di-peptide (carnosine) (see pages 250 and 252). Thus it would have been obvious to a person of ordinary skill in the art at the time of the invention to include beta-alanine, a known non-essential amino acid and a precursor of carnosine, alone or together

with L-histidine in the compositions of Setra because Asatoor teaches the rapid intake of free amino acid beta-alanine.

Patent Owner asserted that Setra does not teach a dietary supplement comprising beta-alanine in an amount effective to increase the function of tissues and delay or avoid the inset of muscular fatigue. Patent Owner's arguments are not persuasive, since the present claims 1-14 do not recite the effective amount of beta-alanine.

Patent Owner argued that the office has not provided a scientific fact to support that ingesting beta-alanine will lead to increase in carnosine in muscle cells. It was well known in the art at the time of the invention that by providing increasing levels of histidine and beta-alanine in the diet would increase the concentration of carnosine in the skeletal muscle cells (for example see Dunnett Thesis (1996), and the references cited in the "Introduction" (pages 193-194)). Further, Hama was cited to show that beta-alanine administration results in increased concentrations of carnosine in rats. Patent Owner's arguments that "Hama did not know or demonstrate the function of carnosine in muscle, he used unsafe dosing levels of beta-alanine, and did not demonstrate any increase in beta-alanine in muscle at physiologically safe levels" are not relevant to the present claims, since the present claims are drawn to composition not the methods of use. Additionally, Patent Owner argued that Dunnett Thesis provides nothing more than a mere invitation to experiment, as would any of the references taught therein. The present rejections are not based on Dunnett Thesis and/or Hama. Dunnett Thesis and the references listed in it and Hama are discussed in this office action to show that ingesting beta-alanine will lead to increase in muscle cells.

**Note** that Dunnett Thesis and Hama (1976) are referred in this office action to address Patent Owner's rebuttal arguments. The references are not used to reject the claims.

## Ground #8

Patent Owner's response (see page 36 of the response filed on 8/23/13)

Patent Owner argued that Setra and Asatoor cannot be combined to render the claimed invention obvious for the same reasons discussed in Ground #7. Patent Owner argued that Gardner uses beta-alanine for a different purpose compared to Setra's compounds. Patent Owner cited declarations of Craig Sale and Harris (filed on 10/29/12) in support of the arguments.

Examiner's comments

The Declarations of Harris and Sale are fully considered and are addressed *infra*. As discussed in this obviousness rejection, Setra discloses human supplementary compositions comprising carnosine and amino acids. Gardner discloses administering beta-alanine to human subjects. Patent Owner's arguments regarding Setra reference was addressed in Ground #7 and Gardner was discussed in Ground #3. In response to Patent Owner's argument that there is no teaching, suggestion, or motivation to combine the references, the examiner recognizes that obviousness may be established by combining or modifying the teachings of the prior art to produce the claimed invention where there is some teaching, suggestion, or motivation to do so found either in the references themselves or in the knowledge generally available to one of ordinary skill in the art.  See *In re Fine*, 837 F.2d 1071, 5 USPQ2d 1596 (Fed. Cir. 1988), *In re Jones*, 958 F.2d 347, 21 USPQ2d 1941 (Fed. Cir. 1992), and *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398, 82 USPQ2d 1385 (2007).  In this case, Setra discloses adding amino acids to the human dietary supplement composition and Gardner discloses experiments in which a test meal comprising 2 g β-alanine plus 2 g of histidine was fed to a human subject. Thus it would have been obvious to a person of ordinary skill in the art at the time of the invention to include beta-alanine, a known non-essential amino acid and a precursor of carnosine, alone or together with L-histidine in the compositions of Setra.

## Grounds #9, 10, 21 and 22

Patent Owner's response (see pages 36-37 of the response filed on 8/23/13)

Patent Owner argued that the references do not to render the claimed invention obvious for the same reasons discussed in Ground #7. Biolo merely teaches insulin is important in protein metabolism and do not teach why insulin is used to decrease fatigue. Patent Owner cited declarations of Harris and Sale (filed on 10/29/12) in support of the arguments.

Examiner's comments

The Declarations of Harris and Sale are fully considered and are addressed *infra*. Patent Owner's arguments regarding Setra and Asatoor were addressed in Ground #7 and Setra and

Gardner were in Ground #8 *supra*. Further, Biolo teaches insulin stimulates the uptake of

alanine. Thus, it would have been obvious to include insulin with the dietary compositions

disclosed in the combined teachings of Setra and Asatoor or Gardner.

## Grounds #11, 12, 23 and 24

Patent Owner's response (see pages 38-39 of the response filed on 8/23/13)

    Patent Owner argued that the references do not to render the claimed invention obvious
for the same reasons discussed in Ground #7. Casey does not remedy the deficiencies of Setra
and either Asatoor or Gardner. Patent Owner cited declarations of Harris and Sale (filed on
10/29/12) in support of the arguments.

Examiner's comments

    The Declarations of Harris and Sale are fully considered and are addressed *infra*. The

teachings of Setra in combination with Gardner or Asatoor were discussed above. Sentra teaches

dietary supplements comprising creatine. Further, the present rejections rely on the teachings of

Casey to show that creatine is creatine monohydrate. Thus it would have been obvious to a

person of ordinary skill in the art at the time of the invention to include creatine monohydrate to

the combined teachings of Setra and Gardner/Asatoor composition, since Casey teaches that

creatine monohydrate is a common form of creatine.

## Grounds # 13 and 14

Patent Owner's response (see pages 8-10 of the response filed on 8/23/13)

    Patent Owner argued that new claims 15-36 have written description support in the
specification and the claims as filed. Claim 15 is within the scope of the patented claim 1, and is
not new matter. The `381 patent specification explicitly supports the claimed range. The
specification provides a lower range (column 9, lines 38-41) and an upper range (column 9, lines
50-51) of beta-alanine per dose. Patent Owner further argued that the applicant does not have to
describe exactly the subject matter claimed, but the description must clearly allow persons
skilled in the art to recognize that the applicants invented what is claimed.

Examiner's comments

**Note** that the amendment filed after ACP on 8/23/13 is not entered. Therefore, the proposed amendment of claims 15-36 are not entered. Thus, the previous rejections of claims 15-36 in Grounds # 13 and 14 are maintained.

In the ACP, Claims 15-36 are rejected as lacking support in the specification (see Ground #13). Claim 15 as in the 12/12/12 amendment claimed a composition comprising all three forms of beta-alanine, which is considered as new matter for the reasons set forth in the ACP.

Further, claim 15 in the 12/12/12 amendment recites the limitation, "that the human dietary supplement contains between 0.4g and 16.0 g of beta-alanine per dose", which has no support in the specification for the reasons set forth in the ACP. The specification in column 9, specifically discloses beta-alanine dose per day for an 80 kg person, whereas the claim 15 recites that the supplement contains between 0.4 g and 16.0 g of beta-alanine per dose. As discussed in the ACP, Examples 2, 3 and 4 in the specification disclose administering 10-40 mgs per kilogram body weight. There is no specific disclosure of the human dietary supplement containing 0.4 g to 16.0 g of beta-alanine per dose in the specification as originally filed.

### *Declarations*

The Declarations of Harris and Craig Sale (filed on 10/29/12) were fully considered and addressed in the ACP mailed on 7/25/13, which are reiterated again in this RAN

1.      The Declaration of Harris ("the Harris Dec.") under 37 CFR 1.132 filed on 10/29/12 is insufficient to overcome the rejections of claims 1-14.

*The Harris Dec. states that "While the human body contains many different chemical compounds, it is well known by those of ordinary skill in the art that simply feeding the components of the compound, even the precursors to the chemical compounds, does not usually lead to an increase of these different chemical compounds (see ¶7 and ¶¶ 14-16).*

It is well known that drugs, vitamins, minerals or chemicals (diet) are consumed by humans, such that these substances result in increased levels of these substances in the body. The Harris Dec. contradicts the findings of Dunnett's thesis (1996). Dunnett thesis (1996) concluded that increasing the endogenous concentrations of both histidine and beta-alanine may result in an increase in muscle carnosine content (see pages 193-195).

*Prior to the discoveries of Mark Dunnett and myself, it was not known that feeding the single amino acid beta-alanine to humans over a period of time would not only increase the level of the dipeptide carnosine, a dipeptide of beta-alanine and histidine, in the muscle but also would increase a person's ability to exercise without fatigue (see ¶¶8, 19-21 of the Harris Dec.).*

The present claims of the `381 patent are drawn to a human dietary supplement (a composition), whereas the declaration is discussing the method of administering/feeding humans (method of use of the composition) and not the claim limitations (see MPEP 716). Thus, the declaration is not commensurate with the scope of the present claims. The limitation "feeding over a period of time" is not present in the claims. Further, prior to the present invention, it was established that ingested beta-alanine passes through the blood stream and forms carnosine in muscle cells (see the Dunnett Thesis (1996) and Hama (1976)).

*Providing continual dose of 40 mg of beta-alanine per kilogram of body weight caused discomfort and paresthesia in subjects (see ¶9 of the Harris Dec.).*

The limitation "continual dose of 40 mg of beta-alanine per kilogram of body weight" is not present in the claims.

*Both Asatoor and Gardner involve ingestion of beta-alanine as single dose to try to better understand how the dipeptide, carnosine, is absorbed by the intestines. Beta-alanine in both Asatoor and Gardner was given to the subject not as a human dietary supplement, but as a control to understand the absorption of the dipeptide carnosine. Neither Asatoor nor Gardner describes providing beta-alanine doses over many days as taught by the patent. A single dose of beta-alanine would be unlikely to have any measurable effect on fatigue (see ¶¶ 12, 13, 20-22 of the Harris Dec.).*

The Harris Dec. is discussing the intended use of the composition comprising beta-alanine and method of use of the composition. However, the present claims are drawn to a composition. The intended use of the claimed composition must result in a structural difference between the claimed composition and the composition of the prior art (Asatoor and Gardner) in order to distinguish the claimed invention from the prior art.

*The preliminary amendment to the patent indicated that the claimed invention was to a human dietary supplement and clearly differentiated between pharmaceutical compositions and dietary supplements. EO `593 does not disclose a human dietary supplement (see ¶¶ 26-30 of the Harris Dec.).*

As discussed in the claim interpretation *supra*, the preamble merely states the purpose of the composition. Since EP `593 anticipated the claimed composition, the intended use of the claimed composition is irrelevant.

*A skin cream of De Lacharriere is not a human dietary supplement as defined in the preliminary amendment (see ¶¶ 32-33 of the Harris Dec.).*

The present specification discloses that the dietary supplements can be ingested, injected, or absorbed through the skin through topical cream or patch (see the `381 patent column 9, lines 21-23 and 28-29). Thus, De Lacharriere clearly anticipates the claimed invention.

*Foods and food essences disclosed by Wu are not a human dietary supplement as defined in the preliminary amendment (see ¶¶ 36-37 of the Harris Dec.).*

Wu reference anticipates the present claim 1, since the composition is not limited to specific amounts.

*Setra used the ingestion of a dipeptide, but does not teach the use of beta-alanine (see ¶¶ 39-42, 44 of the Harris Dec.).*

As discussed above in Grounds # 7 and 8, the teachings of Setra were combined with either Asatoor or Gardner. The secondary references teach the use of beta-alanine in humans.

*Biolo merely teaches insulin importance in protein metabolism. The Office Action does not indicate why one of skill in the art would want to lower the amount of glucose in the blood, an effect that is normally associated with lowering a person's energy and ability to exercise. This appears to be exactly the opposite effect to that desired by the invention (see ¶¶ 46, 77 of the Harris Dec.).*

Biolo teaches that insulin stimulates amino acid uptake by muscle cells and in particular that the uptake of alanine is stimulated.  It would have been obvious to include insulin in the composition of claim 1, not because it aids in protein metabolism or lowers blood sugar, but because it would increase uptake of beta-alanine by the muscle cells and thereby increase the carnosine levels in those cells.

2.      The Declaration of Craig Sale ("the Sale Dec.") under 37 CFR 1.132 filed on <u>10/29/12</u> is insufficient to overcome the rejection of claims.

Application/Control Number: 95/002,001                               Page 34
Art Unit: 3991

The Sale Dec. is similar to the Harris Declaration and stated that it was not known that feeding single amino acid beta-alanine to humans over a period of time would increase the level of the dipeptide carnosine in the muscle or that it would increase a person's ability to work out without fatigue. As discussed *supra*, the declaration is not commensurate with the scope of the present claims, since the limitation "feeding over a period of time" is not present in the claims. The Sale Declaration statements regarding Asatoor, Gardener, EP `593, De Lacharriere, Wu, Setra and Biolo are all similar to the Harris Dec. which are addressed in detail above.

3.      The Declaration of Kunin under 37 CFR 1.132 filed on 8/23/13 is insufficient to overcome the rejection of claims.

The Declaration of Kunin (an attorney with Oblon) was filed regarding policy, practice and procedures of the USPTO as it is related to the domestic right to priority set forth in the MPEP § 201.11, treatment of claim preambles as set forth in MPEP § 2112. For the reasons discussed above in the "priority" and "Claim interpretation", the Kunin's Declaration is not sufficient to overcome the rejections of record.

## *Conclusion*

Claims 1-36 are rejected.

This is a RIGHT OF APPEAL NOTICE (RAN); see MPEP § 2673.02 and § 2674. The decision in this Office action as to the patentability or unpatentability of any original patent claim, any proposed amended claim and any new claim in this proceeding is a FINAL DECISION.

No amendment can be made in response to the Right of Appeal Notice in an *interpartes* reexamination. 37 CFR 1.953(c). Further, no affidavit or other evidence can be submitted in an

*interpartes* reexamination proceeding after the fight of appeal notice, except as provided in 37 CFR 1.981 or as permitted by 37 CFR 41.77(b)(1). 37 CFR 1.116(f).

Each party has a thirty-day or one-month time period, whichever is longer, to file a notice of appeal. The patent owner may appeal to the Board of Patent Appeals and Interferences with respect to any decision adverse to the patentability of any original or proposed amended or new claim of the patent by filing a notice of appeal and paying the fee set forth in 37 CFR 41.20(b)(1). The third party requester may appeal to the Board of Patent Appeals and Interferences with respect to any decision favorable to the patentability of any original or proposed amended or new claim of the patent by filing a notice of appeal and paying the fee set forth in 37 CFR 41.20(b)(1).

In addition, a patent owner who has not filed a notice of appeal may file a notice of cross appeal within fourteen days of service of a third party requester's timely filed notice of appeal and pay the fee set forth in 37 CFR 41.20(b)(1). A third party requester who has not filed a notice of appeal may file a notice of cross appeal within fourteen days of service of a patent owner's timely filed notice of appeal and pay the fee set forth in 37 CFR 41.20(b)(1).

Any appeal in this proceeding must identify the claim(s) appealed, and must be signed by the patent owner (for a patent owner appeal) or the third party requester (for a third party requester appeal), or their duly authorized attorney or agent.

Any party that does not file a timely notice of appeal or a timely notice of cross appeal will lose the right to appeal from any decision adverse to that party, but will not lose the fight to file a respondent brief and fee where it is appropriate for that party to do so. If no party files a timely appeal, the reexamination prosecution will be terminated, and the Director will proceed to issue and publish a certificate under 37 CFR 1.997 in accordance with this Office action.

### ***Future Correspondences***

Application/Control Number: 95/002,001                                                Page 36
Art Unit: 3991

      All correspondence relating to this *inter partes* Reexamination proceeding should be directed to:

**By EFS:**
Registered users may submit via the electronic filing system EFS-Web at

       https://efs.uspto.gov/efile/myportal/efs-registered

**By Mail to:**
     Attn: Mail Stop "Inter Partes Reexam"
     Central Reexamination Unit
     Commissioner for Patents
     P. O. Box 1450
     Alexandria VA   22313-1450

**By FAX to**:
     (571) 273-9900
     Central Reexamination Unit

**Hand-Deliver** any communications to:
     Customer Service Window
     Attn:  Central Reexamination Unit
     Randolph Building, Lobby Level
     401 Dulany Street
     Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

     /Padmashri Ponnaluri/
     Patent Reexamination Specialist, CRU 3991

     Conferees:

     /Evelyn Huang/
     Patent Reexamination Specialist, CRU 3991

     /Deborah D Jones/

     Supervisory Patent Examiner, Art Unit 3991