**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC. and COMPOUND SOLUTIONS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No.  11-788-GMS (Cons.) |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| DNP INTERNATIONAL CO., INC., | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' ANSWERING BRIEF IN SUPPORT OF CLAIM CONSTRUCTION

OF COUNSEL:

Richard J. Oparil
Scott A.M. Chambers, Ph.D.
Kevin M. Bell
Lacy Kolo, Ph.D.
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
Tel:  (202) 457-6000

Caroline Cook Maxwell
PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, TX 75201
Tel:  (214) 758-1500

Dated:  March 7, 2014
1141932 / 34341

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs Natural Alternatives
International, Inc. and Compound Solutions, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

I.      "HUMAN DIETARY SUPPLEMENT" ...........................................................1

        A.      The Term "Human Dietary Supplement" Is A Claim Limitation.........................1

        B.      "Human Dietary Supplement" Should Include All The Elements Proposed
                By NAI. ..................................................................................................6

II.     "EFFECTIVE IN DELAYING THE ONSET OF FATIGUE" .....................................11

        A.      The Term "Effective In Delaying The Onset Of Fatigue" Is Not Indefinite.........11

        B.      The Requirements Of 35 U.S.C. § 112, First Paragraph, Are Separate And
                Distinct From 35 U.S.C. § 112, Second Paragraph. .............................................16

III.    The Claims Do Not Conflate Composition and Method Claims. ...................................19

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbott Labs. v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009)...................................................................................9, 10

*AK Steel Corp. v. Sollac & Ugine*,
344 F.3d 1234 (Fed. Cir. 2003)..........................................................................................17

*All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*,
309 F.3d 774 (Fed. Cir. 2002)............................................................................................11

*In re Am. Acad. of Sci. Tech Center*,
367 F.3d 1359 (Fed. Cir. 2004)..........................................................................................15

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
359 F.3d 1367 (Fed. Cir. 2004)..........................................................................................12

*In re Barr*,
444 F.2d 588 (C.C.P.A. 1971) ............................................................................................19

*In re Borkowski*,
422 F.2d 904 (C.C.P.A. 1970) ............................................................................................16

*Burlington Indus., Inc. v. Quigg*,
822 F.2d 1581 (Fed. Cir. 1987)..........................................................................................15

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)....................................................................................passim

*Computer Docking Station Corp. v. Dell, Inc.*,
519 F.3d 1366 (Fed. Cir. 2008)......................................................................................2, 9

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005)..........................................................................................11

*Digital Biometrics v. Indentix, Inc.*,
149 F.3d 1335 (Fed. Cir. 1998)............................................................................................9

*Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*,
305 F.3d 1303 (Fed. Cir. 2002)............................................................................................9

*Elcommerce.com, Inc. v. SAP AG*,
2014 U.S. App. LEXIS 3357 (Fed. Cir. Feb. 24, 2014)................................................12, 16

*Enzo Biochem, Inc. v. Calgene, Inc.*,
188 F.3d 1362 (Fed. Cir. 1999)..........................................................................................18

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001)...............................................................................11

*In re Halleck*,
    422 F.2d 911 (C.C.P.A. 1970) ...............................................................................13

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)..............................................................................19

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*,
    802 F.2d 1367 (Fed. Cir. 1986)..............................................................................12

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005)..............................................................................12

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*,
    302 F.3d 1352 (Fed. Cir. 2002)................................................................................8

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999)..............................................................................19

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996) .....................15

*In re Mattison*,
    509 F.2d 563 (C.C.P.A. 1975) ...............................................................................13

*Metabolite Labs., Inc. v. Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004)..................................................................... 2, 3, 11

*Ex parte Miyazaki*,
    89 U.S.P.Q.2d 1207 (Bd. Pat. App. & Int. 2008)..................................................15

*In re Morris*,
    127 F.3d 1048 (Fed. Cir. 1997)..............................................................................15

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)................................................................................9

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
    806 F.2d 1565 (Fed. Cir. 1986).......................................................................12, 14

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)................................................................................3

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999)................................................................................2

*Power-One, Inc. v. Artesyn Techs., Inc.*,
   599 F.3d 1343 (Fed. Cir. 2010)..................................................................................12

*Praxair Inc. v. ATMI Inc.*,
   543 F.3d 1306 (Fed. Cir. 2008)..................................................................................12

*Rheox, Inc. v. Entact, Inc.*,
   276 F.3d 1319 (Fed. Cir. 2002)....................................................................................9

*In re Schreiber*,
   128 F.3d 1473 (Fed. Cir. 1997)..................................................................................19

*Schriber-Schroth Co. v. Cleveland Trust Co.*,
   311 U.S. 211 (1940) .....................................................................................................8

*Ex parte Skuballa*,
   12 U.S.P.Q.2d 1570 (Bd. Pat. App. & Inter. 1989)....................................................13

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
   164 F.3d 1372 (Fed. Cir. 1998)................................................................................8, 9

*In re Swinehart*,
   439 F.2d 210 (C.C.P.A. 1971) ...................................................................................19

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)..................................................................................8, 9

*In re Wands*,
   858 F.2d 731 (Fed. Cir. 1988)...............................................................................17, 18

*In re Zletz*,
   893 F.2d 319 (Fed. Cir. 1989)....................................................................................15

## FEDERAL STATUTES

35 U.S.C. § 112..............................................................................................................passim

## OTHER AUTHORITIES

Manual of Patent Examining Procedure § 2173.05 ............................................................14, 20

Plaintiff, Natural Alternatives International Inc. ("NAI"), respectfully submits this response to the proposed claim construction by defendant, DNP International Co., Inc. ("DNP") Memorandum regarding U.S. Patent No. 8,067,381 ("the '381 patent") (collectively "the patent-in-suit").[1]

## INTRODUCTION

As set forth in NAI's Opening Claim Construction Brief (D.I. 48), the claim interpretation issues here are straightforward as they rely on the intrinsic evidence and follow well-settled precedent from the Supreme Court and the Federal Circuit. Importantly, DNP does not offer the Court **any** construction for the disputed terms. Rather, DNP attempts to hijack the claim construction process and argue invalidity by alleging that the claims are indefinite. Moreover, DNP attempts to confuse the issue by muddying the clear differences between indefiniteness (35 U.S.C. § 112, second paragraph) and enablement (35 U.S.C. § 112, first paragraph). As explained *infra*, the claims are not indefinite, nor do they lack enablement. Because DNP does not offer any construction for the disputed terms and impermissibly tries to backdoor a summary judgment motion at this time, the Court should adopt the constructions set forth by NAI in the Joint Claim Construction Chart (D.I. 46).

## I.    "HUMAN DIETARY SUPPLEMENT"

### A.    The Term "Human Dietary Supplement" Is A Claim Limitation.

The term "human dietary supplement" is a claim limitation and DNP does not provide any valid argument to the contrary. Whether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808

---

[1] The construction of U.S. Patent Nos. 5,965,596 ("the '596 patent"), 6,172,098 ("the '098 patent"), and 6,426,361 ("the '361 patent") is the subject of a stipulation and order and the parties' positions have been preserved for appeal. (D.I. 50). *See also* JX 10-16.

(Fed. Cir. 2002). "If the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). The preamble is a limitation when the claims depend on it for antecedent basis or when it "is essential to understand limitations or terms in the claim body." *Catalina*, 289 F.3d at 808.

Even where the limitation does not appear in the body of the claims, the written description and statements made during prosecution can require a term in the preamble to limit a claim. *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008). A "preamble may provide context for claim construction, particularly, where . . . that preamble's statement of intended use forms the basis for distinguishing the prior art in the patent's prosecution history." *Metabolite Labs., Inc. v. Corp. of Am. Holdings*, 370 F.3d 1354, 1358-62 (Fed. Cir. 2004). "[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." *Catalina*, 289 F.3d at 808.

DNP argues that the preamble is merely an intended use. DNP then tells this Court that the term is not referenced in the body of the claims. D.I 49 at 11. This is wrong, as can be determined by a simple inspection of claims 13 and 14.[2] As explained in NAI's opening brief, the term "human dietary supplement" appears in the preamble and body of claims 13 and 14 of the '381 patent. JX 4 at col. 21-22; D.I. 48 at 5-7. The term "human dietary supplement" is a limitation because claims 13 and 14 have the term in the body of the claim and rely upon the

---

[2] Claim 13, for example, reads: "The human dietary supplement of claim 1, **wherein the human dietary supplement** is effective in delaying the onset of fatigue in a human." (Emphasis added.)

presence of the term in the preamble of all the other claims for antecedent basis. *Catalina*, 289

F.3d at 808. There is no question that human dietary supplement is a limitation in claims 13 and

14. Case law holds that identical terms in a patent's claim must be given an identical

construction. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). Thus, human dietary

supplement must be a limitation in claims 13 and 14 and that same meaning – that same

limitation – must be given for all of the appearances of the term "human dietary supplement."

Reading the specification and prosecution history, it is obvious the applicants intended the term

to have meaning, as clearly indicated in the body of claims 13 and 14.

As for DNP's argument that it is merely an intended use, this also must fail. DNP ignores

the entire prosecution history of the '381 patent and the case law related to the use of the

preamble during prosecution to distinguish over the prior art. As explained at length in NAI's

opening brief (D.I. 48), the preamble was used to distinguish the claims over the prior art, the

very prior art that DNP's co-defendant in *Natural Alternatives International, Inc. v. Vital

Pharmaceuticals, Inc., et al.*, Civil Action No. 09-626-GMS (D. Del) ("VPX Litigation")

asserted against the '361, '596 and '098 patents.

For example, the applicants relied upon the term during prosecution to distinguish the

claimed subject matter over the prior art and the Examiner understood this and used it as a

limitation in his examination of the claimed subject matter. *See, e.g.*, *Metabolite Labs., Inc.*, 370

F.3d at 1358-62 (explaining a "preamble may provide context for claim construction,

particularly, where . . . that preamble's statement of intended use forms the basis for

distinguishing the prior art in the patent's prosecution history."); *Catalina*, 289 F.3d at 808

("clear reliance on the preamble during prosecution to distinguish the claimed invention from the

prior art transforms the preamble into a claim limitation because such reliance indicates use of

3

the preamble to define, in part, the claimed invention."). Here, both the applicants and the Examiner relied upon the term to distinguish the claimed invention over the prior art and the term, therefore, is a limitation.

Specifically, the preliminary amendment, filed with the application that issued as the '381 patent, states "[b]y human dietary supplements the applicants mean an addition to the human diet in a pill, capsule, tablet, powder or liquid form, which is not a natural or conventional food, and which effectively increases the function of tissues when consumed." JX 5 at 5. The preliminary amendment also made clear "the term 'human dietary supplement,' as claimed, does not encompass, and does not mean, a natural or conventional food, such as chicken or chicken broth, for example." *Id*. The preliminary amendment also stated that the claimed subject matter, *i.e.*, human dietary supplements containing the individual amino acid beta-alanine, is not encompassed by any alleged prior art or arguments set forth in discovery responses served during the VPX Litigation. *Id*. The amendment further said that the claims do not encompass meat, meat extract supplements and predigested meat/protein supplements and that to the extent any of the compositions alleged as prior art contain the individual amino acid beta-alanine "applicants respectfully submit that the definition of human dietary supplement set forth above does not encompass compositions such as those set forth by the Defendant [Vital Pharmaceuticals] in the Interrogatory Response." *Id*. at 6. In other words, the applicants asked that the term be a limitation and their meaning of the term in the patent aligned with the common meaning for the term. It is clear, therefore, that the term "human dietary supplement" was relied upon during prosecution to distinguish the claimed subject matter over the prior art and so is a proper claim limitation. The applicants could not have been any more clear than to incorporate the terms into

the body of the claim, tell the PTO the term was added to impart a particular meaning and to use the term to distinguish over the cited prior art.

Subsequently, the Examiner allowed the application and in his Notice of Allowability stated, "[t]his application contains claims directed to beta-alanine compositions, which is not part of a dipeptide, polypeptide or oligopeptide and **is in the form of a dietary supplement**." JX 8 at 2 (emphasis added). The Examiner further stated that "upon search of the appropriate data bases [he] was unable to find any reference which would provide a basis for rejection under any of the appropriate patent laws or any of the Office's administrative directives." *Id*. Not only, therefore, did the applicants use the term "human dietary supplement" to distinguish the claimed subject matter over the prior art, the Examiner considered that term to be a limitation and, given the definition supported by the specification and the preliminary amendment, he was unable to find any reference on which to base a rejection.

DNP also ignores the numerous statements in the specification outlining the importance of "human dietary supplement," *i.e.*, the term is a "necessary and defining aspect of the invention." *Catalina*, 289 F.3d at 808. Specifically, the patent-in-suit discloses the importance of the supplements to compensate for the reduced levels of nutrients in the diet. JX 4, col. 1, ll. 40-47; JX 3, col. 1, ll. 18-25.[3] This demonstrates that the applicants intended that the supplements of the invention were something other than a conventional food because they were intended to compensate for reduced levels of nutrients in the diet, *i.e.*, nutrients available from conventional food stuffs and that this was important to the overall invention. Additionally, conventional food stuffs, such as meat and animal produce, cannot be used to supplement the

---

[3] Citations to JX 3 are intended to show that the disclosure is in the '596, '098 and '361 patents as these patents share a common specification as they are continuations. JX 4 contains additional disclosure as one of the applications in the priority chain is a continuation-in-part when compared to the '596, '098 and '361 patents.

diets of particular classes of animals that do not eat these conventional food stuffs. For example, conventional food like meat and animal products cannot be used to supplement the diets of vegetarians.

DNP ignores all of this evidence because that evidence defeats its argument. Rather, DNP cites to a right of appeal notice issued by an Examiner in an *inter partes* reexamination proceeding of the '381 patent in an attempt to confuse the issue. That notice has no bearing on this claim construction. The right of appeal notice is exactly what it states to be, a right to appeal an erroneous reexamination decision to the Patent Trial and Appeal Board. NAI's administrative appeal is pending. All the evidence supports NAI's position that the term "human dietary supplement" is a claim limitation and should be construed as set forth by NAI.

**B.    "Human Dietary Supplement" Should Include All The Elements Proposed By NAI.**

The term "human dietary supplement" should contain all the elements set forth in NAI's construction of the term in the Joint Claim Construction Chart (D.I. 46). DNP argues that if the Court construes the term it should not include the elements recited in NAI's proposed construction because there is no intrinsic evidence that the "human dietary supplement" be limited to a "pill, capsule, tablet, powder, or liquid form" that "effectively increases the function of tissues when consumed." DNP further argues that the intrinsic evidence does not limit the dietary supplement to being consumed, or effectively increasing the function of tissues. This ignores the very words in the claims, *see, e.g.*, claims 13 and 14. DNP again ignores the complete record of the intrinsic evidence and the case law on the matter.

For example, DNP ignores the preliminary amendment, which clearly set forth the definition of the term "human dietary supplement." JX 5 at 5. The preliminary amendment also made clear "the term 'human dietary supplement,' as claimed, does not encompass, and does not

mean, a natural or conventional food, such as chicken or chicken broth, for example." *Id*. The preliminary amendment also stated that the claimed subject matter, *i.e.*, human dietary supplements containing the individual amino acid beta-alanine, is not encompassed by the alleged prior art or arguments set forth in discovery responses served during the prior litigation. *Id*. Specifically, the preliminary amendment stated the claims do not encompass meat, meat extract supplements and predigested meat/protein supplements and that to the extent any of the compositions alleged as prior art contain the individual amino acid beta-alanine "applicants respectfully submit that the definition of human dietary supplement set forth above does not encompass compositions such as those set forth by the Defendant in the Interrogatory Response." *Id*. at 6. It is clear, therefore, that the term "human dietary supplement" contains all the elements set forth in NAI's proposed construction and this is supported by the intrinsic evidence. DNP conveniently ignores this intrinsic evidence because it defeats its argument.

Moreover, DNP cites to one place in the specification to suggest that a dietary supplement should not be limited to a consumed dietary supplement. Again, DNP ignores the overwhelming amount of intrinsic evidence to support NAI's proposed construction that the "human dietary supplement" is consumed. For example, the forms understood by one of skill in the art would be a pill, capsule, tablet, powder or liquid. This is evident from the written description that states "[t]he ingestible formulation can be a drink, a gel, a food, or a tablet." JX 4 at col. 3, ll. 44-45. The written description further states "[t]he compositions of the invention can be used for the preparation of a dietary supplement (including, *e.g.*, drinks, gels, foods) . . . . JX 4 at col. 5, ll. 14-17. It is clear, therefore, that the written description of the patents-in-suit provide support for the "human dietary supplement" to be in the form of a pill, capsule, tablet, powder or liquid that is consumed.

7

Additionally, the written description provides support that the "human dietary supplement" must increase the function of tissues when consumed. According to the specification, "food supplements are typically designed to compensate for reduced levels of nutrients in the modern human and animal diet. In particular, useful **supplements increase the function of tissues** when consumed. It can be particularly important to supplement the diets of particular classes of animals whose normal diet may be deficient in nutrients available only from meat and animal produce (*e.g.*, human vegetarians and other animals consume an herbivorous diet)." JX 4, col. 1, ll. 40-47; JX 3 at col. 1, ll. 18-25 (emphasis added). Example IV demonstrates that consumption of the "human dietary supplements" of the invention increases the function of tissues. Specifically, the maximal voluntary contractile force of the knee extensors increased after consumption of the "human dietary supplements" for a period of 14 days. JX 4 at col. 17, l. 41-col. 18, l. 11; JX 3 at col. 14, l. 38-col. 15, l. 9. DNP disregards this evidence.

The case law also defeats DNP's argument. The prosecution history can demonstrate how the inventor understood the invention and show whether the inventor narrowed the claim scope by limiting the invention during prosecution. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998). The claims, therefore, cannot be construed one way to obtain allowance and subsequently be construed a different way against accused infringers. *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220-21 (1940).

Words in a claim are given their ordinary and customary meaning unless a patentee chooses to be his own lexicographer and provides a special definition of the term in the patent specification or **prosecution history**. *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d

1352, 1359-60 (Fed. Cir. 2002) ("the specification acts as a dictionary when it contains definitions of terms"); *Digital Biometrics v. Indentix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998); *Vitronics*, 90 F.3d at 1582. Definitions of claim terms contained in the specification can be modified by statements made during prosecution. *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1327 (Fed. Cir. 2002) (stating that the Court was not persuaded by arguments that the written description defined certain terms to include the disputed term because "[r]eading the written description alone, this argument might be effective, but in light of the prosecution history, which was generated after the written description was drafted, it is apparent that Rheox relinquished any coverage of the disputed term."); *Spectrum Int'l, Inc.*, 164 F.3d at 1379-80 (determining that the arguments made by Spectrum during prosecution limited the claim scope despite what was in the written description). For this prosecution disclaimer to be valid, the **prosecution history must show clear and unmistakable surrender of subject matter**. *See., e.g., Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003); *Computer Docking Station*, 519 F.3d at 1375; *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288-89 (Fed. Cir. 2009).

While NAI's proffered construction aligns with the common and ordinary meaning of the term, any doubt that it clearly acted as its own lexicographer in setting forth a definition for "human dietary supplement" is erased in the preliminary amendment. JX 5. Also, to the extent "human dietary supplement" could be construed to contain compositions such as natural or conventional foods, or be infused, or administered in some other way other than consumption, **NAI clearly relinquished such scope during prosecution**, specifically in the preliminary amendment. Given the Court's previous claim construction determination in the VPX Litigation that certain statements made during the prosecution of the '596 patent were not a clear disavowal

of claim scope (D.I. 47 Ex. 1), NAI filed the preliminary amendment with the intention of making a clear disavowal of claim scope.[4] Plainly, NAI acted as its own lexicographer in setting forth a definition of the term and clearly disavowed any claim scope that could encompass natural or conventional foods and limited the human dietary supplement to one that is consumed.

DNP's assertion that to exclude conventional and natural foods excludes a preferred embodiment is nonsense. NAI clearly disavowed any claim scope that could cover conventional or natural foods. Furthermore, the term "preferred embodiment" does not appear anywhere in the '381 patent. DNP cannot claim that Example 2, which uses chicken broth to compare the human dietary supplements of the invention to conventional food, is a preferred embodiment, when all the other examples in the patents use the free amino acid beta-alanine rather than chicken broth. Moreover, case law holds that a patent applicant can disavow claim scope, even scope that would include a proffered embodiment. *See, e.g.*, *Abbott Labs.*, 566 F.3d at 1288.

DNP ignores the case law and the overwhelming intrinsic evidence supporting NAI's proposed construction. Furthermore, DNP does not offer any alternative construction, arguing instead that the term "human dietary supplement" is not a limitation, or in the alternative it is indefinite. Because DNP does not offer any construction for this term, the Court should adopt NAI's proposed construction.

---

[4] The preliminary amendment set forth a clear definition of the term "human dietary supplement." JX 5 at 5. The preliminary amendment also stated the claims do not encompass meat, meat extract supplements and predigested meat/protein supplements and that to the extent any of the compositions alleged as prior art contain the individual amino acid beta-alanine "applicants respectfully submit that the definition of human dietary supplement set forth above does not encompass compositions such as those set forth by the Defendant in the Interrogatory Response." *Id*. at 6.

## II.   "EFFECTIVE IN DELAYING THE ONSET OF FATIGUE"

### A.   The Term "Effective In Delaying The Onset Of Fatigue" Is Not Indefinite.

The term "effective in delaying the onset of fatigue" is not indefinite because one of skill in the art, reading the patent as a whole, is able to determine the metes and bounds of the claim. DNP ignores (1) the teaching of the specification as it would be understood by one of skill in the art, (2) the case law on this issue, and (3) the intrinsic evidence.

DNP has a heavy burden to prove indefiniteness. The statutory presumption of patent validity means that "close cases of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1380 (Fed. Cir. 2001). A claim is not indefinite "merely because it poses a difficult issue of claim construction." *Id.* at 1375. "Only after a thorough attempt to understand the meaning of a claim has failed to resolve material ambiguities can one conclude that the claim is invalid for indefiniteness. Foremost among the tools of claim construction is of course the claim language itself, but other portions of the intrinsic evidence are clearly relevant, including the patent specification and prosecution history." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 780 (Fed. Cir. 2002).[5] A court will not find a patented claim indefinite unless it is "insolubly ambiguous."[6] Also, "[t]he test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine

---

[5] *See also Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) ("If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.").

[6] *See, e.g.*, *Exxon Research and Eng'g Co.*, 265 F.3d at 1375; *Metabolite Labs., Inc.*, 370 F.3d at 1366 ("The requirement to 'distinctly' claim means that the claim must have a meaning discernible to one of ordinary skill in the art when construed according to correct principles. . . . Only when a claim remains insolubly ambiguous without a discernible meaning after all reasonable attempts at construction must a court declare it indefinite.").

infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005). The validity of a claim, therefore, will be preserved if some meaning can be gleaned from the language. Further, the issue of what one of ordinary skill in the art would understand requires expert testimony in order to prove indefiniteness by clear and convincing evidence. *See Elcommerce.com, Inc. v. SAP AG*, 2014 U.S. App. LEXIS 3357 (Fed. Cir. Feb. 24, 2014).

As long as a claim "is not insolubly ambiguous, it is not invalid for indefiniteness." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367 (Fed. Cir. 2004). A decision on whether a claim is indefinite under 35 U.S.C. § 112, second paragraph, requires a determination of whether those skilled in the art would understand what is claimed when the claim is read in light of the specification. *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1350 (Fed. Cir. 2010); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565 (Fed. Cir. 1986). This is a term that those of skill in the art would readily understand and comprehend. Moreover, the specification does not need to be a model of clarity, or eloquently describe a particular limitation, provided it describes the limitation in dispute so that one of skill in the art could determine the metes and bounds of the claim.[7] For example, in *Orthokinetics*, a claim directed to a wheelchair included the phrase "so dimensioned as to be insertable through the space between the doorframe of an automobile and one of the seats thereof." 806 F.2d at 1568. The Court found the phrase to be as accurate as the subject matter permits, since automobiles are of various sizes. "As long as

---

[7] *See, e.g.*, *Praxair Inc. v. ATMI Inc.*, 543 F.3d 1306, 1321 (Fed. Cir. 2008) ("Although the discussion of the port body in the '895 patent's specification may not be a model of clarity, the specification adequately explains that the port body is a housing that sealingly engages the outlet of the cylinder and defines the fluid discharge path."); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (Fed. Cir. 1986) ("the claims, read in light of the specification, reasonably apprise those skilled in the art and are as precise as the subject matter permits. As a matter of law, no court can demand more.").

those of ordinary skill in the art realized the dimensions could be easily obtained, § 112, 2d para. requires nothing more." *Id*. at 1576.

DNP also ignores case law regarding the term "effective amount," which is instructive here. The proper test is whether or not one skilled in the art could determine specific values for the amount based on the disclosure. *See In re Mattison*, 509 F.2d 563 (C.C.P.A. 1975). The phrase "an effective amount . . . for growth stimulation" was held to be definite where those skilled in the art would be able to determine from the written disclosure, including the examples, what an effective amount is. *In re Halleck*, 422 F.2d 911 (C.C.P.A. 1970). The phrase an "effective amount of a compound of claim 1," which related to a pharmaceutical composition, was held to be definite, even though the function to be achieved was not stated. *Ex parte Skuballa*, 12 U.S.P.Q.2d 1570 (Bd. Pat. App. & Inter. 1989).

Here, determining the effective amount needed for any particular sized person involves a simple experiment. Indeed, the specification clearly shows how one of skill in the art could determine the amount and over what period of time the human dietary supplement needs to be consumed to "effectively delay the onset of fatigue." For example, Example IV describes an experiment in which subjects were given beta-alanine for 14 days and their performance pre- and post-supplementation was assessed. Before the supplementation period began, the subjects performed exercise at 66% of their maximum ability until they reached fatigue and this was repeated three times with a 60 second interval between each contraction. JX 4 at col. 16, l. 60-col. 17, l. 5; JX 3 at col. 13, ll. 24-39. The subjects were then supplemented with beta-alanine for 14 days. JX 4 at col. 17, ll. 8-17; JX 3 at col. 13, l. 42-col. 14, l. 9. On day 14, the subjects repeated the endurance test to determine if there was any change relative to endurance before the beginning of the study. JX 4 at col. 17, ll. 18-21; JX 3 at col. 14, ll. 10-13. The results

13

indicate that the mean endurance time increased in nearly all the subjects, *i.e.*, 14 days of supplementation with beta-alanine at 10 milligrams per kilogram body weight three times per day delayed the onset of fatigue. JX 4 at col. 17, ll. 41-47; JX 3 at col. 14, ll. 37-44. One of skill in the art reading the specification and claims as a whole is able to determine the amount and over what period of time the human dietary supplement is consumed to "effectively delay the onset of fatigue."

DNP's argument that other factors, such as sex, height, weight, body type, metabolism or age are variables that can alter delaying the onset of fatigue and that the specification provides no guidance on this issue is irrelevant. The same could be true for every preparation that is claimed as "effective amount," which even the MPEP recognizes as clear and definite. Manual of Patent Examining Procedure ("MPEP") § 2173.05(c)(III). Similar to the situation in *Orthokinetics*, 806 F.2d at 1565, one of skill in the art would know that these factors are present in a human population and that the description in the claims and the specification is as precise as the art permits. Also, given the disclosure in the specification, one of skill in the art would be able to calculate the amount and period of time over which the supplement should be consumed to "effectively delay the onset of fatigue." Using Example IV as a guide, the period of time should be about 14 days. Also, given the weights of the subjects in the study, the human dietary supplement was given in daily doses of between 1.95 grams per day and 3.15 grams per day. JX 4 at col. 16, ll. 45-54; JX 4 at col. 17, ll. 16-17.[8] So again, like *Orthokinetics*, one of skill in the art would be able to determine the "variables" based upon the teaching of the specification.

---

[8] Example IV should not be seen to limit the amount to these values, but be a guide to one of skill in the art to determine the metes and bounds of the claim. For example, taking the range of weights of an average human population, the daily amount of beta-alanine, based on the dose used in Example IV, could be as low as approximately 1.2 g.

Furthermore, in asserting that this claim term is indefinite, DNP ignores the intrinsic evidence of the prosecution history. As stated above, patented claims enjoy a presumption of validity, but no presumption of validity attaches before the issuance of a patent. The PTO is not required or even permitted to interpret claims when examining patent applications in the same manner as the courts, which, post-issuance, operate under the presumption of validity. *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997); *In re Zletz*, 893 F.2d 319, 321-22 (Fed. Cir. 1989). The PTO must construe claims in the broadest reasonable manner during prosecution in an effort to establish a clear record of what an applicant intends to claim. In deciding whether a pending claim particularly points out and distinctly claims the subject matter, a lower threshold of ambiguity is applied during prosecution. *In re Am. Acad. of Sci. Tech Center*, 367 F.3d 1359, 1369 (Fed. Cir. 2004) ("However, the Board is required to use a different standard for construing claims than that used by district courts."); *Ex parte Miyazaki*, 89 U.S.P.Q.2d 1207, 1212 (Bd. Pat. App. & Int. 2008). As such, an applicant has the ability to provide explanation or amend the claims to ensure that the meaning of the language is clear and definite prior to issuance.[9] During examination, after applying the broadest reasonable interpretation to the claim, if the metes and bounds of the claimed invention are not clear, the claim is indefinite and should be rejected. *Zletz*, 893 F.2d at 322. Moreover, patent applications are reviewed by examiners, who are presumed to have expertise and level of skill in the art; therefore, "[i]f the patent's claims are sufficiently unambiguous for the [PTO], there should exist no factual ambiguity when those same claims are later construed by a court of law in an infringement action." *Markman v.*

---

[9] *See, e.g., Burlington Indus., Inc. v. Quigg*, 822 F.2d 1581, 1583 (Fed. Cir. 1987) ("Issues of judicial claim construction such as arise after patent issuance, for example during infringement litigation, have no place in prosecution of pending claims before the PTO, when any ambiguity or excessive breadth may be corrected by merely changing the claim.").

*Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (internal citations omitted) (*en banc*), *aff'd*, 517 U.S. 370 (1996).

Here, the Examiner during prosecution of the '381 patent, using this broadest reasonable interpretation and lower threshold of ambiguity, did not reject claim 13 with the term "effectively delays the onset of fatigue" as being indefinite under 35 U.S.C. § 112, second paragraph. Moreover, the right of appeal notice that DNP attached as an exhibit to its opening brief does not reject any of the claims, including claim 13, which contains the disputed term, as being indefinite.

As discussed *supra*, the specification provides ample guidance to one of skill in the art how to determine an amount sufficient to be consumed over a period of time to "effectively delay the onset of fatigue," *i.e.*, "an effective amount." DNP has not come forward with any actual evidence, let alone the expert evidence required by *Elcommerce.com*, to find the '381 patent invalid for indefiniteness by clear and convincing evidence.

**B.    The Requirements Of 35 U.S.C. § 112, First Paragraph, Are Separate And Distinct From 35 U.S.C. § 112, Second Paragraph.**

The requirements of the first and second paragraphs of 35 U.S.C. § 112 are separate and distinct. If a description, or the enabling disclosure of a specification, is not commensurate in scope with the subject matter encompassed by a claim, that alone does not render the claim indefinite under 35 U.S.C. § 112, second paragraph; rather, the claim is based on an insufficient disclosure (35 U.S.C. § 112, first paragraph). *In re Borkowski*, 422 F.2d 904 (C.C.P.A. 1970). "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out

his invention." 35 U.S.C. § 112, first paragraph. "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, second paragraph. Nowhere in 35 U.S.C. § 112, second paragraph, is there a requirement that the specification disclose or teach one of skill in the art how to make or use the claimed invention. The requirement that the specification disclose or teach one of skill in the art how to make or use the claimed invention is the enablement requirement of 35 U.S.C. § 112, first paragraph.

The "enablement requirement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003); *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988). The determination that "undue experimentation" would have been needed to make and use the claimed invention is not a single, simple factual determination. Rather, it is a conclusion reached by weighing all the following factual considerations: (1) the breadth of the claims; (2) the nature of the invention; (3) the state of the prior art; (4) the level of one of ordinary skill; (5) the level of predictability in the art; (6) the amount of direction provided by the inventor; (7) the existence of working examples; and (8) the quantity of experimentation needed to make or use the invention based on the content of the disclosure. *Wands,* 858 F.2d at 737. It is improper to conclude that a disclosure is not enabling based on an analysis of only one of the above factors while ignoring the others; the determination must be based on the evidence as a whole and consider all the evidence related to each of the above enumerated factors. *Id*. Whether a claim satisfies the enablement requirement of 35 U.S.C. § 112, first paragraph, is a question of law based on underlying facts. *AK Steel Corp.*, 344 F.3d at 1238-39. The party alleging invalidity for lack of enablement must prove by clear and

convincing evidence that the specification fails to teach one of ordinary skill in the art how to make or use the invention. *See Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1378 (Fed. Cir. 1999). The determination as to whether a claim is enabled, *i.e.*, the specification teaches one of skill in the art how to make or use it without undue experimentation, is, therefore, based on a multi-factorial factual determination.

Here, DNP fails again to properly adhere to the law and ignores the overwhelming amount of evidence that contradicts its position. First, DNP alleges that the term "effective in delaying the onset of fatigue" is indefinite and argues that the specification does not teach one of skill in the art how to delay the onset of fatigue and provides little guidance on how to use the human dietary supplement in a manner that is effective in delaying the onset of fatigue. As explained above, this "teaching" is an enablement issue under 35 U.S.C. § 112, first paragraph, not an indefiniteness issue under 35 U.S.C. § 112, second paragraph. Indefiniteness is a question of law that could be dealt with at the claim construction stage, but enablement is a question of law based on underlying multi-factor facts, which is dealt with through summary judgment or trial. By confusing the two distinct issues, DNP attempts to circumvent the Scheduling Order and this Court's procedures. This should not be allowed.

DNP does not address all the factual enquiries necessary to determine enablement. *Wands*, 858 F.2d at 737. Instead, DNP merely makes conclusory statements that the specification does not teach one of skill in the art how to use the claimed invention. DNP must do this, as to address these factual enquiries would transform a claim construction into a summary judgment.

As discussed *supra*, DNP ignores the overwhelming amount of intrinsic evidence supporting NAI's proposed construction. Specifically, DNP references Example IV in the '381 patent, admits that this demonstrates an increase in endurance following beta-alanine

18

supplementation, but tries to argue that this gives no guidance to one of skill in the art. This is specious. NAI explains, *supra*, how the specification provides ample support for its proposed construction of this term and guidance to one of skill in the art to determine the sufficient amount and the period of time over which this amount is consumed. DNP should not be allowed to hijack this claim construction to argue its summary judgment position. Because DNP has not proposed any claim construction, the Court should adopt NAI's proposed construction for this term set forth in the Joint Claim Construction Chart (D.I. 46).

## III.   THE CLAIMS DO NOT CONFLATE COMPOSITION AND METHOD CLAIMS.

The claims do not conflate composition and method claims as DNP alleges. Rather, the claims include functional limitations for the human dietary supplement, which is permissible. "A patent applicant is free to recite features of an apparatus either structurally or functionally." *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997). Functional language does not, in and of itself, render a claim improper. *In re Swinehart*, 439 F.2d 210, 212 (C.C.P.A. 1971). In fact, 35 U.S.C. § 112, sixth paragraph, expressly authorizes a form of functional claiming (means-plus-function claim limitations). Functional language may also be employed to limit the claims without using the means-plus-function format. *See, e.g., K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999). When a claim limitation employs functional language, a determination of whether the limitation is sufficiently definite is dependent on context (*e.g.*, the disclosure in the specification and the knowledge of a person of ordinary skill in the art). *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008). For example, it was held that the limitation used to define a radical on a chemical compound as "incapable of forming a dye with said oxidizing developing agent" although functional, was perfectly acceptable because it set definite boundaries on the patent protection sought. *In re Barr*, 444 F.2d 588 (C.C.P.A. 1971). In determining whether functional language is ambiguous, the following factors should be

considered:  (1) whether there is a clear-cut indication of the scope of the subject matter covered by the claim; (2) whether the language sets forth well-defined boundaries of the invention or only states a problem solved or a result obtained; and (3) whether one of ordinary skill in the art would know from the claim terms what structure or steps are encompassed by the claim. MPEP § 2173.05(g).

The claims are not indefinite because they contain functional language. As discussed *supra*, the language of the claims and NAI's proposed constructions clearly define the metes and bounds of the claims, and one of skill in the art would be able to determine the scope of the claims. Any attempt by DNP to confuse the Court by arguing that the claims conflate composition and method claims is erroneous.

<u>**CONCLUSION**</u>

For the aforementioned reasons, NAI respectfully asks this Court to adopt its proposed construction of the two disputed claim terms.

Respectfully submitted,

OF COUNSEL:

Richard J. Oparil
Scott A.M. Chambers, Ph.D.
Kevin M. Bell
Lacy Kolo, Ph.D.
PATTON BOGGS LLP
2550 M Street, NW
Washington, DC 20037
Tel:  (202) 457-6000

Caroline Cook Maxwell
PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, TX 75201
Tel:  (214) 758-1500

Dated:  March 7, 2014
1141932 / 34341

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
　　Richard L. Horwitz (#2246)
　　David E. Moore (#3983)
　　Hercules Plaza, 6th Floor
　　1313 N. Market Street
　　Wilmington, DE  19801
　　Tel:  (302) 984-6000
　　rhorwitz@potteranderson.com
　　dmoore@potteranderson.com

*Attorneys for Plaintiffs Natural Alternatives*
*International, Inc. and Compound Solutions, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on March 7, 2014, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on March 7, 2014, the attached document was electronically mailed to the following person(s):

Karen E. Keller
Andrew E. Russell
Shaw Keller LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for DNP International Co., Inc.*

Enoch H. Liang
Steven R. Hansen
Edward S. Quon
Lee Tran & Liang APLC
601 S. Figueroa Street, Suite 4025
Los Angeles, CA  90017
enoch.liang@ltlattorneys.com
steven.hansen@ltlattorneys.com
edward.quon@ltlattorneys.com
*Attorneys for DNP International Co., Inc.*

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

947955/34341